**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Willie James BLAKE, Jr.,**
**Defendant–Appellant.**

**No. 95–5273.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 1, 1996.

Decided April 18, 1996.

**ARGUED:** Gregory Davis, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Paul Alexander Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** William E. Martin, Federal Public Defender, Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Judge WILKINS wrote the opinion, in which Judge LUTTIG and Judge MOTZ joined.

## OPINION

WILKINS, Circuit Judge:

Willie James Blake, Jr. pled guilty to using unauthorized access devices (stolen credit cards) in violation of 18 U.S.C.A. § 1029(a)(2) (West Supp.1995). Blake now challenges his sentence, arguing that the district court erred by enhancing his offense level based on the vulnerability of his victims, *see* United States Sentencing Commission, *Guidelines Manual,* § 3A1.1 (Nov.1994), and in departing upward from the applicable guideline range. He also challenges the restitution order imposed by the district court on numerous grounds. We affirm the sentence of imprisonment and term of supervised release, but vacate the restitution order and remand with instructions.

## I.

Blake pled guilty to a one-count indictment charging that he had knowingly and with intent to defraud used ten unauthorized credit cards to obtain items of value. The indictment listed the card numbers and issuing banks, as well as the names of the individuals to whom the cards were issued. The presentence report prepared after Blake entered his plea recommended that pursuant to U.S.S.G. § 2F1.1 Blake's base offense level should be six. It also noted that two specific offense characteristics made him eligible for a three-level enhancement for loss in excess of $10,000 and a two-level enhancement for more than minimal planning. See U.S.S.G. § 2F1.1(b)(1)(2)(A). And, the report recommended that Blake receive a two-level enhancement for targeting unusually vulnerable victims because he had obtained the credit cards by stealing pocketbooks and wallets from elderly women while they were shopping. See U.S.S.G. § 3A1.1. In addition, the report suggested that because Blake had committed the offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level should not be less than 13. See U.S.S.G. § 4B1.3. It concluded the offense level calculation by recommending that Blake receive a two-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1.

Blake's criminal history calculation resulted in the attribution of a total of 35 criminal history points, placing him in Criminal History Category VI. See U.S.S.G. Ch. 5, Pt. A. The report further advised, however, that the court should consider whether his Criminal History Category adequately reflected the seriousness of his past criminal conduct or the likelihood that he would commit other crimes and, if not, whether an upward departure would be appropriate. See U.S.S.G. § 4A1.3. The report recommended restitution to the banks that issued the cards for losses sustained as a result of the unauthorized charges and to the individuals from whom the cards were stolen as payment for expenditures they incurred as a result of the thefts, i.e., expenses related to lost property and document replacement. See 18 U.S.C.A. § 3663 (West 1985 & Supp.1995); U.S.S.G. § 5E1.1.

Blake raised several objections to the presentence report.[1] First, he challenged the vulnerable victim enhancement, arguing that the individuals from whom he stole the credit cards were not victims of his offense of conviction and that even if these people were victims, they were not unusually vulnerable within the meaning of § 3A1.1. The district court concluded that the individuals were victims under this guideline and that Blake specifically targeted elderly persons because they were less able to defend themselves.[2] Accordingly, it applied the two-level vulnerable victim enhancement in calculating Blake's adjusted offense level. See U.S.S.G. § 3A1.1.

Blake also objected to the application of § 4B1.3 (Criminal Livelihood). The district court adopted the proposed finding in the presentence report that Blake's conduct in the 12 months preceding his arrest made him eligible for application of this section, which mandated that his offense level not be less than 13. Further, it adopted the recommendation that independent of this provision Blake's offense level with enhancements was also 13. Finally, the court adopted the recommendation that Blake receive a two-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. As a result, Blake's adjusted offense level was 11. See U.S.S.G. § 4B1.3.

The district court further concluded that Blake's Criminal History Category VI inadequately represented the seriousness of his past criminal conduct. Rejecting Blake's ar-

---

1. Although Blake initially challenged the enhancement for more than minimal planning, he did not raise that objection during the sentencing hearing, nor does he object to its application now.

2. The district court based this finding on testimony given at the sentencing hearing. The police officer who interviewed Blake shortly after his arrest testified that during the course of the interview Blake said that he preferred to steal from elderly women because they presented less of a threat. Believing this testimony to be credible, the district court found that Blake had targeted elderly victims because they "could not fend for themselves as well as other people might." J.A. 87.

gument that a departure based on criminal history would constitute impermissible double counting of his past criminal conduct because it had already relied on this conduct in applying § 4B1.3, the district court departed upward to offense level 15 and imposed a sentence of 51 months imprisonment. The district court reached level 15 after making specific findings that offense levels 11, 12, 13, and 14, when combined with Criminal History Category VI, were insufficient to represent the seriousness of Blake's past criminal conduct. *See* U.S.S.G. § 4A1.3; *United States v. Cash,* 983 F.2d 558, 561 & nn. 6–7 (4th Cir.1992), *cert. denied,* 508 U.S. 924, 113 S.Ct. 2380, 124 L.Ed.2d 284 (1993).

Blake raised further objections to the restitution recommendations contained in the presentence report. First, he maintained that he lacked the ability to pay restitution, arguing that a potentially life-threatening physical condition prevented him from working. In addition, he asserted that he had no real ability to earn a living due to a lifetime of drug abuse.

Although acknowledging that Blake might have a condition that affected his present ability to work, the district court made no finding as to the permanency of this condition. It then adopted the recommendation of the presentence report that even though Blake lacked the present ability to pay restitution, he should have the earning capacity sufficient to pay restitution in the future while in prison or on supervised release because he was able-bodied. The district court made no further findings regarding his ability to pay restitution.

Blake also objected to the suggested amount of restitution because it included amounts attributable to the persons from whom he stole the credit cards. He asserted that he could not be ordered to pay restitution to these individuals under 18 U.S.C.A. § 3663 because they were not victims of his offense of conviction. Rejecting this argument, the district court ordered restitution in the amount of $1,922.00 to the robbery victims in addition to $13,824.83 to the card issuers. The subsequently entered restitution order stated that Blake would pay the restitution "at such times and in such amounts as directed by the Bureau of Prisons or the U.S. Probation Officer." J.A. 102.

Blake now challenges his sentence on several grounds, essentially asserting that the district court erred in rejecting his objections to the presentence report. We address these arguments in turn.

## II.

■ Blake first challenges the manner in which the district court applied the sentencing guidelines. We begin by noting that in reviewing the application of the guidelines by a district court, we examine factual determinations for clear error; legal questions, however, are subject to a de novo standard of review. *United States v. Singh,* 54 F.3d 1182, 1190 (4th Cir.1995).

### A.

Blake first contends that the district court improperly enhanced his offense level by two levels based on a finding that he targeted unusually vulnerable victims. *See* U.S.S.G. § 3A1.1. He argues that the persons from whom he stole the credit cards were not victims of his offense of conviction—fraudulent use of unauthorized access devices—and therefore were not properly considered vulnerable victims for the purposes of § 3A1.1. Alternatively, he maintains that even if these individuals are considered victims, they do not meet the standard of vulnerability required for proper application of this enhancement. We disagree.

■ Section 3A1.1 provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." The term "offense" is defined as "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1, comment. (n.1($l$)). And, § 1B1.3(a)(1) includes as relevant conduct, *inter alia,* all acts committed by the defendant in preparation for the offense of conviction. We therefore reject Blake's argument that, for the purpose of § 3A1.1, "a victim of the offense" is only an individual considered

a victim of the specific offense of conviction. *See United States v. Lee,* 973 F.2d 832, 834 & n. 2 (10th Cir.1992); *United States v. Yount,* 960 F.2d 955, 958 (11th Cir.1992); *United States v. Roberson,* 872 F.2d 597, 608–09 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). *But see United States v. Bondurant,* 39 F.3d 665, 667–668 (6th Cir.1994). As the record clearly indicates, Blake stole pocketbooks and wallets in order to secure credit cards for use in his plan to defraud the card issuers. Such acts unquestionably were conduct committed in preparation for the offense of conviction. Accordingly, we hold that the individuals from whom he stole the credit cards were victims of the offense within the meaning of U.S.S.G. § 3A1.1.

■ Blake also contends that even if the persons from whom he stole the credit cards properly are considered victims under the guidelines, the district court erred in concluding that they were unusually vulnerable victims pursuant to § 3A1.1. Once an individual has been found to be a victim within the meaning of § 3A1.1, proper application of this enhancement requires the existence of two additional elements. First, the victim must have been unusually vulnerable; and second, the defendant must have targeted the victim because of the unusual vulnerability. *United States v. Holmes,* 60 F.3d 1134, 1136 (4th Cir.1995); *Singh,* 54 F.3d at 1191. That a victim is elderly, without more, does not justify application of the vulnerable victim enhancement under § 3A1.1. *See Lee,* 973 F.2d at 834.

■ The district court found that Blake had specifically targeted elderly people who, by virtue of their age, were less physically able to defend themselves during his robbery attempts. Within this context, we conclude that the district court was not clearly erroneous in finding that Blake's victims were unusually vulnerable because of their age and that Blake targeted them due to this vulnerability. *See United States v. Seligsohn,* 981 F.2d 1418, 1426 (3d Cir.1992). Accordingly, we find application of the § 3A1.1 enhancement appropriate.

## B.

Blake next contends that the district court improperly departed upward based on a finding that his Criminal History Category VI was inadequate to reflect the seriousness of his past criminal conduct. *See* U.S.S.G. § 4A1.3 (Adequacy of Criminal History Category). He maintains that because the district court apparently considered his criminal history in applying § 4B1.3 (Criminal Livelihood), further consideration of his criminal history in deciding to depart constituted impermissible double counting. Again, we disagree.

■ Although both of these guideline sections direct the court to examine past criminal conduct, each provision is designed to penalize a different type of criminal behavior. Section 4B1.3 instructs the court to examine a defendant's conduct during a 12–month period. If it finds that the instant offense was part of a "pattern of criminal conduct engaged in as a livelihood," the district court must adjust the offense level to "not less than 13" or—in the event a reduction for acceptance of responsibility is appropriate—to "not less than 11." On the other hand, § 4A1.3 focuses on serious or repetitive criminal conduct. Under its provisions, the district court is to examine a defendant's entire criminal past; if it finds that a defendant's Criminal History Category does not "adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that[he] will commit other crimes," the court may consider an upward departure. U.S.S.G. § 4A1.3. The former section attempts to assure adequate punishment for those defendants who prey on society for their livelihood. *See* U.S.S.G. § 4B1.3, comment. (backg'd.). The latter section, however, is designed to deal with defendants who possess an "extensive record" that is not adequately reflected by their Criminal History Category, or those whose criminal background shows them to "pose a greater risk of serious recidivism." U.S.S.G. § 4A1.3, comment. (backg'd.). Because an individual can engage in criminal conduct to provide his livelihood as well as possess a criminal past not adequately represented by his Criminal History Category—or demonstrate a high

probability of repeating his behavior—both provisions may apply to the same defendant and both may be used in determining the appropriate sentence. *See United States v. Morse,* 983 F.2d 851, 852–54 (8th Cir.1993) (affirming application of both provisions).

 In addition, even if we assume the district court relied on some of the same conduct in applying both provisions, reversal of Blake's sentence is not appropriate. Unless a guideline provision expressly prohibits consideration of a factor previously used in applying another guideline section, the factor may be used to determine whether that provision applies as well. *United States v. Curtis,* 934 F.2d 553, 556 (4th Cir.1991). Neither § 4B1.3 nor § 4A1.3 includes a provision prohibiting double counting. As a result, even if double counting occurred, it did not result in an improper application of the guidelines. Therefore, we conclude that the district court did not err in departing upward.

### III.

 We next consider Blake's challenges to the restitution order. The decision to order restitution pursuant to the Victim and Witness Protection Act of 1982 (VWPA), *as amended,* 18 U.S.C.A. §§ 3663–3664 (West 1985 & Supp.1995), is within the discretion of the district court, and we will not disturb that decision absent an abuse of discretion. *United States v. Piche,* 981 F.2d 706, 718 (4th Cir.1992), *cert. denied,* 508 U.S. 916, 113 S.Ct. 2356, 124 L.Ed.2d 264 (1993).

### A.

 This court has repeatedly held that in order to ensure effective appellate review of restitution orders, sentencing courts must make explicit findings of fact on each of the factors set forth in 18 U.S.C.A. § 3664(a) (West Supp.1995).[3] *United States v. Molen,* 9 F.3d 1084, 1086 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1649, 128

L.Ed.2d 368 (1994); *accord United States v. Plumley,* 993 F.2d 1140, 1142–43 (4th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 279, 126 L.Ed.2d 230 (1993); *Piche,* 981 F.2d at 717; *United States v. Bailey,* 975 F.2d 1028, 1031 (4th Cir.1992); *United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987) (interpreting predecessor to § 3664(a)). Such findings must tie the amount and type of restitution ordered to the financial resources, financial needs, and earning ability of the defendant. *See, e.g., Molen,* 9 F.3d at 1086. Moreover, the court must make a specific finding that the defendant feasibly can comply with the order without undue hardship to himself or his dependents. *Id.* The district court may satisfy this requirement by announcing its findings on the record or by adopting adequate proposed findings contained within a presentence report. *Id.*

 Despite the clear mandate from this court, the district court failed to articulate on the record specific findings with respect to Blake's earning ability or financial needs. And, it completely failed to make a factual determination that Blake could make the necessary restitution payments without undue hardship to himself or his teenage daughter.[4] Nor did the court adopt a presentence report containing adequate findings as to these factors.

 We do not suggest that the district court will be unable to make findings supporting a restitution award. Rather, it simply failed to do so. As this court has previously admonished, failure to make the required findings necessitates remand. *See Molen,* 9 F.3d at 1087; *Piche,* 981 F.2d at 718. Consequently, we vacate the restitution order and remand to allow the district court to make the appropriate findings.

### B.

 Blake also contends that because the persons from whom he stole the credit

---

3. These factors are "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C.A. § 3664(a).

4. Although the presentence report noted that Blake did not live with this daughter and presently provided no financial support, it specifically listed her as a dependent and stated that she did need his support.

cards are not victims of his offense of conviction, their losses of $1,922.00 should not have been included in the restitution order. We are compelled to agree.[5]

The VWPA provides that "[t]he [district] court, when sentencing a defendant convicted of an offense under [Title 18] ... may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C.A. § 3663(a)(1). As interpreted by the Supreme Court, the VWPA "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990).

In 1990, following the *Hughey* decision, the VWPA was amended.[6] At present, if the offense involves "as an element" a scheme, conspiracy, or pattern of criminal activity, the definition of "victim" includes any person directly harmed by the defendant's criminal conduct. 18 U.S.C.A. § 3663(a)(2); *United States v. Broughton–Jones,* 71 F.3d 1143, 1149 (4th Cir.1995). This amendment, however, does not authorize a district court to order restitution to all individuals harmed by a defendant's criminal conduct. *See Broughton–Jones,* 71 F.3d at 1148–49. For a person to be considered a victim under § 3663, the act that harms the individual must be either conduct underlying an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of the offense of conviction. *Id.; see United States v. Obasohan,* 73 F.3d 309, 311 (11th Cir.1996) (per curiam); *Plumley,* 993 F.2d at 1142. But, if the harm to the person does not result from conduct underlying an element of the offense of conviction, or conduct that is part of a pattern of criminal activity that is an element of the offense of conviction, the district court may not order the defendant to pay restitution to that individual. *See Broughton–Jones,* 71 F.3d at 1149; *United States v. Ledesma,* 60 F.3d 750, 751 (11th Cir.1995); *United States v. Neal,* 36 F.3d 1190, 1200–01 (1st Cir.1994).

Although the result we are compelled to reach represents poor sentencing policy, the statute as interpreted requires the holding that the persons from whom Blake stole the credit cards do not qualify as victims of his offense of conviction, and as such he cannot be ordered to pay restitution to them. Blake's theft of the credit cards represents a pattern of criminal activity that was a necessary step in the accomplishment of his objective, *i.e.,* use of unauthorized access devices. But, the factual connection between his conduct and the offense of conviction is legally irrelevant for the purpose of restitution. *See Broughton–Jones,* 71 F.3d at 1149. The Government allowed Blake to plead guilty to one count of fraudulent use of unauthorized access devices in violation of 18 U.S.C.A. § 1029(a)(2). "This offense ... has four elements: 1) the intent to defraud; 2) the knowing use of or trafficking in an unauthorized access device; 3) to obtain things of value in the aggregate of $1,000 or more within a one-year period; and 4) an affect on interstate or foreign commerce." *United States v. Tunning,* 69 F.3d 107, 112 (6th Cir.1995); *see also* 18 U.S.C.A. § 1029(a)(2). The specific conduct underlying these elements, and thus forming the basis for Blake's offense of conviction, does not include the theft of the credit cards. Nor does the offense include as an element a scheme, conspiracy, or pattern of criminal activity that encompasses such conduct. As a result, the

---

**5.** Although we have held that the persons from whom Blake stole the credit cards are victims for the purposes of the sentencing guidelines, *see supra* p. 504, this is not dispositive of the question with respect to restitution orders issued pursuant to 18 U.S.C.A. § 3663. The definition of victim provided in this statute is much narrower than the one in the guidelines, and it is § 3663— not the guidelines—that governs the authority of a sentencing court to require restitution. *United States v. Silkowski,* 32 F.3d 682, 688 (2d Cir. 1994); *United States v. Baker,* 25 F.3d 1452, 1457 (9th Cir.1994); *see also* U.S.S.G. § 5E1.1(a).

**6.** Although this amendment superseded *Hughey* 's holding in part, this court has recognized that *Hughey* still applies when, in the absence of an appropriate plea agreement that provides for restitution, a restitution award " 'clearly encompasses an offense for which the defendant was not convicted.' " *Broughton–Jones,* 71 F.3d at 1147 n. 1 (quoting *Bailey,* 975 F.2d at 1033 n. 1). Because the plea agreement entered into below did not address restitution, and the theft of the credit cards is not the offense of conviction, *Hughey* applies.

loss to the robbery victims was not caused by Blake's offense of conviction.[7] *See Broughton-Jones,* 71 F.3d at 1149; *Ledesma,* 60 F.3d at 751; *see also United States v. Hayes,* 32 F.3d 171, 173 (5th Cir.1994); *United States v. Cobbs,* 967 F.2d 1555, 1558–59 (11th Cir.1992). The district court, therefore, erred by including the loss attributable to these individuals in its restitution order.

■ We emphasize that this undesirable result can be corrected in the future by congressional action further amending 18 U.S.C.A. § 3663(a) or by a plea agreement that requires a defendant to make restitution to individuals directly harmed by his criminal conduct. Blake's plea agreement did not include a restitution provision, although it easily could have. Moreover, it could have included a specific provision requiring restitution to the persons he robbed in order to obtain the cards. Another 1990 amendment to the VWPA permits a district court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C.A. § 3663(a)(3). And, "such agreements may authorize restitution in an amount greater than the loss attributable to the offense of conviction." *Broughton-Jones,* 71 F.3d at 1147; *see also United States v. Soderling,* 970 F.2d 529, 534 (9th Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993); *United States v. Rice,* 954 F.2d 40, 44 (2d Cir.1992).

### C.

■ Finally, we consider Blake's argument that the district court erred by delegating the determination of the amount and schedule of restitution installment payments to the Bureau of Prisons or U.S. Probation Office. This court recently held that deciding the amount and timing of restitution payments is a non-delegable judicial function. *United States v. Johnson,* 48 F.3d 806, 809 (4th Cir.1995). As such, the portion of the restitution order that authorized these agencies to determine the amount and schedule of restitution payments was improper. Of

course, a district court may receive and consider recommendations as to the amount and schedule of payments from other sources. *See id.* Final approval, however—as well as decisions regarding future modification—may not be delegated.

### IV.

In conclusion, we affirm Blake's sentence of imprisonment and term of supervised release. We vacate the restitution order and remand with instructions that the district court make the required findings on the factors listed in § 3664. If the district court then orders restitution, it may not award restitution to the persons from whom Blake stole the credit cards, and it may not delegate its authority to determine the amount of, and schedule for, installment payments of restitution to the card issuers.

*AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS.*

---

7. The robbery victims' claims for loss included only replacement costs of pocketbooks, wallets, and items of a similar nature. Had they paid the credit card companies for charges made against their credit cards by the thief, as to these amounts they would have been considered vic-

tims under the VWPA and thus be entitled to restitution. This is so because this type of loss would be attributable to conduct underlying *use* of the cards, an element of the offense of conviction, as opposed to injury resulting solely from the *theft* of the cards.