UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4350

REGINALD THURSTON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-96-43-F)

Submitted: February 10, 1998

Decided: March 17, 1998

Before MURNAGHAN and LUTTIG, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

C. Christopher Henderson, Trenton, North Carolina, for Appellant.
Janice McKenzie Cole, United States Attorney, Anne M. Hayes,
Assistant United States Attorney, Yvonne V. Watford-McKinney,
Assistant United States Attorney, Raleigh, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Reginald Thurston appeals from his conviction of aiding and abetting credit card fraud, 18 U.S.C. §§ 2, 1029(a)(5) (1994), for which he was sentenced to thirty-seven months imprisonment. Thurston claims, first, that the district court committed clear error by applying the two-point enhancement for a "vulnerable victim," U.S. Sentencing Guidelines Manual § 3A1.1(b) (1997). Second, Thurston challenges the two-point enhancement he received for a scheme to defraud more than one person, see USSG § 2F1.1(b)(2)(B). Third, Thurston alleges that the district court improperly calculated the victim's loss at greater than $10,000, thereby increasing his offense level by three points. Fourth, Thurston claims that the evidence was insufficient to support the jury's verdict. Finally, Thurston claims that the district court erred in denying his motion to dismiss the indictment. Finding these claims without merit, we affirm.

The evidence presented at Thurston's trial, viewed in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), established the following. On November 29, 1995, Thurston and Michael Lamar Nobles Blackman engaged Ms. Elizabeth Pretty Harris, a 72-year old woman, in a confidence scam known as the "donation." Thurston approached Harris on the street and, pretending to be from South Africa and speaking with a bogus accent, asked her for directions to a nonexistent church. Blackman, pretending to be a passerby, stopped to join in the conversation and soon the two men convinced Harris to drive them to a non-existent home in the area so that Thurston could find lodging.

While driving in Harris' car, Thurston and Blackman determined, through a series of scripted questions, how much credit Harris had on her credit cards. They also managed to convince Harris that Thurston was carrying a great deal of cash--ostensibly from Thurston's share

2

of a settlement in a wrongful death action in South Africa--which he wished to donate to a charitable cause in the United States. As a demonstration of her good faith and ability to "accept" Thurston's donation, he asked Harris to withdraw $30,000 from her bank to show him. The three went, first, to Centura Bank where Harris withdrew $5000 on her Visa card and then to another bank where Harris withdrew $5000 from her savings account, all of which she gave to Thurston. Thurston placed the money in a bandana and pretended to wrap it up with the "donation" he was to give Harris. At the end of the day, after Thurston and Blackman persuaded Harris to spend another $2800 on merchandise for the two men during a shopping spree, Harris was left with a bandana containing only strips of paper.

Thurston first challenges the two-level enhancement he received under USSG § 3A1.1(b) for an offense involving an "unusually vulnerable victim." Section 3A1.1(b) applies "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." Id. In order to apply this provision, the district court must make two findings: (1) that the victim was unusually vulnerable and (2) that the defendant targeted the victim because of the victim's unusual vulnerability. See United States v. Singh, 54 F.3d 1182, 1191 (4th Cir. 1995). In other words, the district court must find that because of age, mental or physical condition, or any other relevant deficit, the victim was "more susceptible to abuse from a perpetrator than most other potential victims of the particular offense." Id. at 1191-92. And, the district court must find that the defendant "targeted" the victim because of the victim's unusual vulnerability. See United States v. Holmes, 60 F.3d 1134, 1136 (4th Cir. 1995). "At the very least, the victim's vulnerability must play a role in the defendant's decision to select that victim as the target of the crime." Singh, 54 F.3d at 1192.

Blackman testified that he and Thurston specifically targeted elderly people, such as Harris, because they have more money and because they were less likely to be able to identify him and Thurston. Accordingly, we find that the district court did not clearly err in applying the "vulnerable victim" enhancement. See United States v. Blake, 81 F.3d 498, 503-504 (4th Cir. 1996) (upholding vulnerable

3

victim enhancement where defendant specifically targeted elderly victims).

Thurston next challenges the two-level enhancement he received under USSG § 2F1.1(b)(2)(B) (scheme to defraud more than one victim) because the indictment only charged him with attempting to defraud Harris. It is well established that, in determining relevant conduct, a sentencing court may consider uncharged conduct and conduct associated with acquitted charges. See United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994); USSG § 1B1.3. Blackman testified that he and Thurston had carried out several other flim-flam schemes directed at elderly victims (once successfully). Therefore, the district court did not clearly err in finding that Thurston intended to defraud more than one victim.

Next, Thurston claims that the district court clearly erred in its determination that the victim's loss exceeded $10,000, thereby increasing his offense level by three levels. See USSG § 2F1.1(b)(l). Specifically, Thurston claims that the $5000 which Harris withdrew from her savings account should not be counted because it was not credit card fraud. Because the money which Thurston caused Harris to withdraw from her savings account was clearly"relevant conduct" under § 2F1.1, the district court did not clearly err in determining the amount of loss attributable to Thurston's conduct. See USSG § 1B1.3(a)(1) (relevant conduct includes all acts committed by the defendant during, and in preparation for, the offense of conviction).

Thurston next challenges the sufficiency of the evidence to support his conviction. We must uphold a jury's verdict if there is substantial evidence, viewed in the light most favorable to the Government, to support the conviction. See Glasser, 315 U.S. at 80. To obtain a conviction for credit card fraud, 18 U.S.C. § 1029(a), the Government must prove (1) the intent to defraud; (2) the knowing use of or trafficking in an unauthorized access device (credit cards and automatic teller machine cards); (3) to obtain things of value in the aggregate of $1000 or more within a one-year period; and (4) an affect on interstate or foreign commerce. See Blake, 81 F.3d at 506. We find that the evidence presented by the Government met the burden of proof as to all of these elements and that, therefore, the evidence was sufficient to sustain Thurston's conviction.

4

Finally, Thurston alleges that the district court committed reversible error by denying his motion to dismiss the indictment in which he claimed that 18 U.S.C. § 1029 was intended to be used only in telemarketing crimes. Thurston points to a passage in the legislative history of § 1029 which specifically addresses only telemarketing fraud. However, the plain and unambiguous language of § 1029 covers the conduct charged in this indictment. We find nothing in the legislative history of § 1029 that justifies departing from the plain meaning of the statutory language.

For the foregoing reasons, we affirm Thurston's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

<u>AFFIRMED</u>

5