**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 98-4068

DONALD EVANS, a/k/a Don Antonio
Flournoy,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CR-97-153-BR)

Argued: December 4, 1998

Decided: January 7, 1999

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
HERLONG, United States District Judge for the District of
South Carolina, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Arthur Webb, Federal Public Defender, Raleigh,
North Carolina, for Appellant. John Stuart Bruce, Assistant United
States Attorney/Chief, Criminal Division, Raleigh, North Carolina,
for Appellee. **ON BRIEF:** Edwin C. Walker, First Assistant Federal
Public Defender, Raleigh, North Carolina, for Appellant. Janice Mc-

Kenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Janet L. Mingin, Third Year Student, Campbell University School of Law, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

On February 8, 1997, the defendant, Don Flournoy, a/k/a Donald Evans ("Flournoy"), broke into a vehicle at Fort Bragg, North Carolina, and stole the wallet of Calvin L. Walters ("Walters"), containing his personal identification and several credit cards. Flournoy also stole a purse containing a checkbook of Jheanle Irons ("Irons"). Two days later, Flournoy applied for a car loan at NationsBank in Walters' name. Flournoy also made a down payment with Irons' stolen check. The loan totaled $14,933.58.

Over the next two weeks, Flournoy continued to use Walters' financial information and credit cards to make several purchases, totaling nearly $6,600.00 in merchandise. On March 7, 1997, Flournoy was arrested in Tampa, Florida. Flournoy ultimately admitted to stealing both Walters' wallet and Irons' purse and to purchasing the vehicle under Walters' name.

On October 2, 1997, a federal grand jury indicted Flournoy of bank fraud and interstate transportation of stolen property. Flournoy pled guilty to bank fraud. At sentencing, the government showed that Flournoy caused financial losses to the parties involved. NationsBank suffered a loss of $5,169.95 on the vehicle. The car dealer lost $727.69. The two-week spending spree cost several merchants a total of $6,600.00. The district court sentenced Flournoy to imprisonment

2

of 33 months and to 60 months of supervised release. The court further ordered Flournoy to pay restitution of nearly $12,500.00, consisting of: $5,169.95 to the bank, $727.69 to the car dealer, and $6,599.43 to the merchants.

II.

A.

The court reviews a challenge to a restitution order for abuse of discretion. United States v. Henoud, 81 F.3d 484, 487 (4th Cir. 1996).

B.

1.

The order of restitution to the merchants was not authorized. Congress set the bounds for criminal restitution in the Victim and Witness Protection Act ("VWPA"), 18 U.S.C.A. #8E8E # 3663 (West 1985 & Supp. 1998). The VWPA instructs that a district court"when sentencing a defendant convicted of [certain offenses] . . . may order . . . that the defendant make restitution to any victim of such offense." Id. at § 3663(a)(1)(A). The United States Supreme Court has stated that the VWPA "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413 (1990). Therefore, the VWPA "does not authorize a district court to order restitution to all individuals harmed by a defendant's criminal conduct." United States v. Blake, 81 F.3d 498, 506 (4th Cir. 1996).

The merchants defrauded by Flournoy's credit card use are not victims under the VWPA. Victims qualify for restitution under three scenarios: (1) when the defendant's count of conviction involves a scheme, conspiracy, or pattern of criminal activity and that conspiracy causes direct harm to a person; (2) when the defendant directly and proximately harms a person as a result of the commission of an offense of conviction; and (3) when a plea agreement sets such restitution. See 18 U.S.C.A. §§ 3663A(a)(2)-(3). The parties in the instant case agree that restitution to NationsBank and the car dealer was

3

proper. Furthermore, they agree that the remaining restitution amount was not a direct and proximate result of Flournoy's bank fraud conviction, nor was it the result of a plea agreement. Therefore, the two sides argue only over the first restitution scenario: whether the credit card purchases during the two-week spending spree were part of a "scheme, conspiracy, or pattern of criminal activity" related to bank fraud. Under the law of this court, Flournoy's credit card abuse was not a part of any such scheme to defraud the bank.

2.

The court cannot view the alleged theft and use of the credit cards as part of a scheme because the conduct fails to meet any element of a charge of bank fraud. "[I]f the harm to the person does not result from . . . conduct that is part of a pattern of criminal activity that is an element of the offense of conviction, the district court may not order the defendant to pay restitution to that individual." Blake, 81 F.3d at 506. Flournoy pled guilty to a count of bank fraud, which punishes those who (1) knowingly execute a scheme to obtain the money, funds, or other property owned by or under the control of a financial institution by means of fraudulent pretenses; (2) with the intent to defraud the financial institution; and (3) the institution is federally insured. See 18 U.S.C.A. § 1344 (1984 & Supp. 1998); see also United States v. Bales, 813 F.2d 1289, 1293 (4th Cir. 1987) (stating intent requirement under section 1344). The use of the credit cards does not support this charge.

While Flournoy's theft of the checkbook and credit cards had a temporal proximity, the government convicted him only of defrauding the bank. This conviction involved the use of the stolen checks, not credit cards. While a connection between the two exists, the link "is legally irrelevant for the purpose of restitution." Blake, 81 F.3d at 506. The government asks the court to cast a broad net and include Flournoy's credit card theft as part of the larger bank fraud scheme. However, this court has faced this question before and declined to do so.

In Blake, a criminal defendant robbed several individuals of their wallets and purses and then used their credit cards to make purchases. He ultimately pled guilty to using stolen credit cards. Id. at 501. The

4

district court ordered that he pay restitution to several parties, including the original individual theft victims. On appeal, this Court held that restitution to the theft victims was not proper. We reasoned that "[t]he specific conduct underlying these elements, and thus forming the basis for Blake's offense of conviction, does not include the theft of the credit cards." Id. at 506.**1** Similarly, in the case at bar, Flournoy's conduct giving rise to a conviction of bank fraud does not include the use of the stolen credit cards. If we remove all of the circumstances surrounding Flournoy's credit card theft, his bank fraud conviction still stands. Therefore, Flournoy cannot be ordered to pay restitution for his alleged use of the credit cards. **2**

_____

**1 Blake**'s focus on the elements of the count forming the basis of conviction has been affirmed by two other panels of this court. In United States v. Watts, No. 96-4787, 1998 WL 398740 (4th Cir. July 8, 1998) (unpublished opinion), the defendant obtained several loans through the use of fraudulent tax returns. A jury convicted Watts of tax evasion, filing a false tax return, bankruptcy fraud, and bank fraud. See id. at **1. The court then ordered Watts to pay restitution to a financing company that fell victim to his criminal conduct. See id . This loan did not support his bank fraud conviction, as the court noted that"Watts' conduct in obtaining this loan did not form the basis of any count of conviction." Id. at **3. For this reason, the court held that restitution to the financing company was unlawful. See id. at **4. Though Watts used the same fraudulent conduct to victimize the financing company, that conduct did not support a specific element in any count of conviction.

More recently, this court upheld Blake in United States v. Sadler, No. 95-5947, 1998 WL 613821 (4th Cir. Sept. 4, 1998) (unpublished opinion). In Sadler, the defendant was convicted of both bank and social security fraud. Following conviction, the district court ordered Sadler to pay restitution to an apartment complex. The court, citing Blake, held that the apartment complex was not a victim entitled to restitution. See id. at *2. The court vacated the restitution order, stating: "[A]lthough [defending the apartment complex] was part of a pattern of criminal activity, the pattern [itself] is not an element of his offense." Id.
**2** This view is in accord with other circuits. See, e.g., United States v. Tunning, 69 F.3d 107, 116 (6th Cir. 1995) (holding restitution invalid when based on losses suffered under two dismissed counts); United States v. Ledesma, 60 F.3d 750, 750-51 (11th Cir. 1995) (holding restitution invalid when based on the theft of a vehicle where the conviction was for the attempted exportation of a stolen vehicle); United States v. Neal, 36 F.3d 1190, 1201 (1st Cir. 1994) (holding restitution invalid when victim's losses not attributable to defendant's specific conduct).

The reasoning in <u>Blake</u> applies with added force in the case at bar. The district court ordered Blake to pay restitution to the individual cardholders that he defrauded. This court noted that Blake's "theft of the credit cards represents a pattern of criminal activity that was a necessary step in the accomplishment of his objective, i.e., use of unauthorized access devices." <u>Id</u>. Nevertheless, the court concluded "the factual connection between his conduct and the offense of conviction is legally irrelevant for the purpose of restitution." <u>Id</u>. As noted above, Flournoy's conduct forms no connection with his offense of conviction because no part of his involvement with the credit cards impacts his conviction for bank fraud. The nexus between Flournoy's conduct and the disputed restitution is further removed than the connection in <u>Blake</u>. Therefore, this court is unable to reconcile the district court's order of restitution to the credit card merchants with the holding of <u>Blake</u>.

3.

Despite this lack of connection between the two crimes, the government could have secured full restitution by Flournoy in its plea agreement. The <u>Blake</u> court admonished the government:

> We emphasize that this undesirable result can be corrected in the future by congressional action further amending 18 U.S.C.A. § 3663(a) or by a plea agreement that requires a defendant to make restitution to individuals directly harmed by his criminal conduct. Blake's plea agreement did not include a restitution provision, although it easily could have. Moreover, it could have included a specific provision requiring restitution to the persons he robbed in order to obtain the cards. Another 1990 amendment to the VWPA permits a district court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." And, "such agreements may authorize restitution in an amount greater than the loss attributable to the offense of conviction."

<u>Blake</u>, 81 F.3d at 507 (citations omitted); <u>see also United States v. Robinson</u>, No. 97-4036, 1998 WL 789179 (4th Cir. Nov. 13, 1998) (upholding broad restitution order found in plea agreement). There-

fore, the government in this case had clear instruction on how to insure full restitution by Flournoy. It failed to follow these instructions. Accordingly, the district court must amend its sentence by deleting the restitution ordered to the merchants.

<u>VACATED AND REMANDED</u>

7