**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4796**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHARLES LUTHER VARNER, JR.,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Samuel G. Wilson, District Judge. (5:05-cr-00025-sgw)

———————

Argued: November 1, 2007          Decided: January 14, 2008

———————

Before GREGORY and DUNCAN, Circuit Judges, and James A. BEATY, Jr., Chief United States District Judge for the Middle District of North Carolina, sitting by designation.

———————

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Duncan and Judge Beaty joined.

———————

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellant. Ray Burton Fitzgerald, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Katherine M. Goss, LAW OFFICES OF MARVIN D. MILLER, Alexandria, Virginia, for Appellant. John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

On July 13, 2005, Charles Luther Varner, Jr., ("Varner") was indicted on thirteen counts, including conspiracy to manufacture or distribute methamphetamine, money laundering, unlawfully carrying on a business involving untaxed liquor, possession of a still without properly registering it, and illegal possession of firearms. Varner filed a motion to suppress the evidence obtained from the search of his residence, contending that the state agents did not have probable cause, and Drug Enforcement Agency ("DEA") agents improperly seized evidence from the state agents without a warrant or court order. Varner also filed a motion to dismiss, arguing that the DEA improperly destroyed evidence obtained during the search. After an evidentiary hearing, the district court denied both motions. Shortly thereafter, Varner signed a plea agreement with the Government, which the district court accepted. The plea agreement included a provision allowing Varner to appeal the district court's decision denying his motion to suppress and motion to dismiss. Varner timely appealed that decision. After a thorough review of Varner's claims, we affirm the district court's decision.

I.

On November 4, 2004, Virginia Alcoholic Beverage Control Special Agent D.L. Blye ("Blye") applied to a Virginia magistrate

2

for a warrant to search Varner's residence.  In his affidavit, Blye wrote:

> On 10/6/04 S/A D.L. Blye received information from a confidential informant that Charles Varner was manufacturing "moonshine" from a copper still located in the garage at his residence.  The informant stated that it was a 15-20 gallon still that produces approximately 20-30 gallons a week and that he sells it for 20-25 dollars a quart to friends and acquaintances.
>
> On 11/03/04 at [sic] S/A D.L. Blye conducted surveillance on the residence and observed the garage door open.  Blye observed a large tank consistent with a still; similar to an oil tank on it's [sic] side occupying the left side of the garage.  The tank appeared to have a vent pipe, which would be consistent with a "doubler" or worm connection.

(J.A. 58.)  In addition, Blye informed the magistrate that he had ten years of law enforcement experience and "[b]ased on a subsequent observation I feel that the [informant's] information is consistent and reliable."  (J.A. 58.)  Varner's address and a description of his house were also included on the affidavit.  The magistrate signed the warrant on the same day.

On November 11, 2004, Blye and other Virginia law enforcement agents executed the search warrant to look for items in Varner's possession that could be connected with the illegal manufacturing and/or possession of untaxed liquor.  During the search, the agents found "suspected narcotics" and evidence "relating to the manufacturing of methamphetamine."[1]  (J.A. 67.)  As a result, Blye

---

[1]During a pat down of Varner, the agents found a "white powdery substance" in the pocket of Varner's pants.  (J.A. 67.) Varner admitted that the substance was "meth."  (J.A. 67.)

successfully obtained a second warrant to search for illegal narcotics and items related to the possession and/or distribution of illegal narcotics. After securing the second search warrant, the state agents found chemicals and laboratory equipment in Varner's garage. The laboratory equipment was consistent with methamphetamine production. Blye then obtained a third warrant to search the suspected methamphetamine laboratory. Subsequently, the state agents found and seized glassware and chemicals from the suspected methamphetamine laboratory.

At some point during the investigation, the state agents requested the assistance of a team of specialized agents, including a DEA agent and DEA laboratory personnel. Upon arriving at the Varner residence, a DEA agent concluded that the laboratory equipment could be used to manufacture methamphetamine. Eventually, the DEA took possession of the glassware and chemicals and, in accordance with DEA protocol for handling hazardous materials, destroyed some of the materials before performing any tests to identify the chemicals or the contents of the glassware.

On February 10, 2006, Varner filed a motion to suppress the evidence seized from his house because (1) there was no probable cause to support the issuance of the first search warrant and (2) the DEA agents seized evidence from the state agents without a warrant or a court order. In addition, Varner filed a motion to dismiss, essentially arguing that DEA destroyed the evidence in

4

violation of 21 U.S.C. §881(f)(2)[2], constituting bad faith per se on the part of the DEA.

On March 9, 2006, the district court held an evidentiary hearing on both motions. Varner's witnesses testified that they were in Varner's garage on or about November 3, 2004, (i.e., the date when Blye first observed the still in Varner's garage) and did not see any of the items described in Blye's first affidavit. In addition, Varner proffered the testimony of his friend, Thomas Gale ("Gale").[3] Gale would have confirmed his presence in Varner's garage on November 3, 2004, and testified that he did not see anything in the garage resembling an oil can or a still. Blye also testified at the hearing, providing details of his surveillance of Varner's residence, including his observation of the still. The district court credited Blye's testimony and concluded that Blye attempted to describe his observations accurately.

---

[2] 21 U.S.C. § 881(f)(2) reads: The Attorney General may direct the destruction of all controlled substances in schedule I or II seized for violation of this subchapter; all dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) of this section; and any equipment or container subject to forfeiture under subsection (a)(2) or (3) of this section which cannot be separated safely from such raw materials or products under such circumstances as the Attorney General may deem necessary.

[3] Despite being subpoenaed, Gale did not appear at the evidentiary hearing. The district court held that even if Gale had testified, it would not have made a difference in the outcome of the hearing. (J.A. 244-45, fn.1.)

On March 20, 2006, the district court issued a memorandum opinion denying Varner's motions to suppress and to dismiss. Subsequently, Varner signed a plea agreement with the Government, pleading guilty to three counts with the remaining counts dismissed. The district court accepted the plea agreement and sentenced Varner to a total of 180 months imprisonment. On appeal, Varner argues that (1) there was no probable cause to issue the first search warrant and the good faith exception to the exclusionary rule, as articulated in United States v. Leon, 468 U.S. 897 (1984), was inapplicable; (2) the DEA's seizure of some of the glassware and chemicals found in Varner's garage from the state agents violated Virginia state law; and (3) the DEA improperly destroyed evidence that was crucial to Varner's defense, violating his constitutional rights to due process and to defend and confront evidence used to convict him.[4] The Government contends that the magistrate properly granted the first search warrant because there was probable cause and because it fell under Leon's good faith

---

[4]In Crawford v. Washington, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause disallows "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." It is debatable whether Varner actually made a Crawford claim at the district court level. Regardless, an agent's failure to preserve evidence does not violate the Confrontation Clause unless the defendant can demonstrate bad faith on the part of the agent. Arizona v. Youngblood, 488 U.S. 51, 57 (1988). Because we find no evidence of bad faith on the part of the DEA agents, Varner's Crawford claim must fail.

exception.  In addition, the Government argues that the DEA's seizure and destruction of some of the State's evidence accorded with official DEA protocol.  We will review each of Varner's claims in turn.

II.

"On motions to suppress, we review factual findings under a clearly erroneous standard, while reviewing legal conclusions <u>de novo</u>.  Significantly, in our review of motions to suppress, we review the evidence in the light most favorable to the prevailing party below."  <u>United States v. Foreman</u>, 369 F.3d 776, 790 (4th Cir. 2004) (citations omitted).

i.

The district court denied Varner's motion to suppress the first search warrant, holding that the evidence was admissible under the good faith exception.  Varner argues that the district court erred because Blye's first affidavit provided the magistrate with "unreliable conclusions which lacked supporting facts such that the magistrate could not make an independent, neutral and detached judgment on the existence of probable cause" (Appellant's Br. 16), and the good faith exception was inapplicable.

The <u>Leon</u> Court held that in deciding whether to apply the Fourth Amendment's exclusionary sanction in any particular case, we must "weigh[] the costs and benefits of preventing the use in the

7

prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective." Leon, 468 U.S. at 907. Indeed, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922.

There are four circumstances under which the good faith exception is inapplicable: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role"; (3) a police officer relies "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." Id. at 923 (citations and internal quotation marks omitted). Because we find no error in the district court's determination that there is no evidence to support the

8

existence of the other three <u>Leon</u> circumstances[5], we will focus on whether the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Id.</u> at 923.

Varner argues that the first affidavit was so lacking in probable cause that Blye's belief in it was unreasonable because (1) the first affidavit included an allegation that came from an unnamed, unknown informant whom Blye did not know, thereby precluding Blye from providing the magistrate with any information as to the reliability of the informant; (2) Blye stated that he had ten years of law enforcement experience without providing the magistrate with his background in investigating whiskey stills and moonshine; and (3) the technical terms in the first search warrant - e.g., "doubler" and "worm connection" - could not have been familiar to the magistrate. Based on these alleged "deficiencies" in Blye's first affidavit, the operative question is whether "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization" because the affidavit was so lacking in probable cause. <u>United States v. Bynum</u>, 293 F.3d 192, 195 (4th Cir. 2002).

---

[5]The district court held that, "[n]othing suggests to this court that Blye 'misled' the magistrate by knowingly or recklessly presenting false information, that the magistrate 'wholly abandoned his judicial role,' or that the warrant was 'so facially deficient' that Blye could not have reasonably presumed it to be valid." (J.A. 248.)

Varner cites to our decision in United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), to support his argument that Leon's good faith exception is inapplicable to this case. In Bynum, 293 F.3d at 196-97, the Court ably summarized the facts in Wilhelm:

> After receiving an anonymous telephone tip that an informant had seen marijuana being sold in the defendant's home within the past 48 hours, an officer applied for a search warrant. The officer did not meet the informant before or after receiving the tip and did not know the informant. In support of the warrant, the officer described the informant as a 'concerned citizen' and a 'mature person with personal connections with the suspects [who] has projected a truthfully [sic] demeanor to this applicant.' The officer's only corroborating information was that she had confirmed directions to the residence and that the description of the marijuana and of the sale transactions was consistent with her knowledge of marijuana packaging and sales. We held that the Leon good faith exception did not apply because the officer 'could not reasonably rely on an unknown, unavailable informant without significant corroboration,' and the magistrate thus acted only as a 'rubber stamp' in approving a 'bare bones' affidavit. We further noted that [w]hile perhaps not undertaken with deliberate bad faith, [the officer]'s use of phrases such as 'concerned citizen,' 'mature' and 'truthful demeanor' struck us as attempts to endue the affidavit with the appearance of genuine substance.

(internal citations omitted). Wilhelm cited to a Fifth Circuit decision that defined a "bare bones" affidavit as "one that contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." Wilhelm, 80 F.3d. at 121 (citing United States v. Laury, 985 F.2d 1293, 1311 n. 23 (5th Cir.1993)).

The district court, in rejecting Varner's claim, distinguished the instant case from Wilhelm:

10

. . . Blye's affidavit is markedly different from the wholly conclusory affidavit the court found deficient in Wilhelm. Here, Blye corroborated the informant's tip by personally conducting surveillance of the Varners' residence and observing a still consistent with the informant's tip which Blye described in the affidavit, thus providing a factual base, not "bare bones" or mere conclusory statements. Thus, the court finds that the Leon good-faith exception applies and denies the Varners' motion to suppress.

(J.A. 249.) Like the officer in Wilhelm, Varner contends that Blye provided no information to the magistrate as to the reliability of the confidential informant. Indeed, there are two significant issues on which Blye does not explicitly corroborate the informant's information. First, the informant stated that the still was made of copper; Blye's first affidavit did not address the propriety of this observation. Second, the informant stated that the still held 15-20 gallons; Blye confirmed the existence of a "large tank consistent with a still" but did not estimate how many gallons the tank he observed could hold. The district court, after hearing Blye's testimony, admitted that the officer "may have been mistaken about the size of the tank he saw" (J.A. 246), but attributed this possible discrepancy to Blye's vantage point which was "some distance away [from Varner's garage]." (J.A. 246.)

Varner also argues that the size and shape of a still, along with the ability to identify its component parts, is not common knowledge, but rather information derived from training or experience. Thus, Varner contends that Blye should have informed the magistrate about his areas of expertise and training in alcohol

11

related investigations. Varner concludes that since the magistrate was unlikely to be familiar with the technical terms used by Blye, he would have had to rely upon Blye's experience in such matters. As the first affidavit did not include any such information, Varner states that the magistrate erred in relying upon Byle's representations.

Having set out Varner's arguments, we now review the district court's application of our precedent to the facts. First, as we held in Wilhelm, "[t]wo factors are key to this [probable cause] analysis: the informant's "veracity" or "reliability" and his or her "basis of knowledge." Wilhelm, 80 F.3d at 119. While keeping in mind that the Leon good faith threshold is lower than that necessary to establish probable cause[6], it is clear that the magistrate was not provided with any indication of the informant's reliability or what, if any, relationship the officer had with the informant. Nevertheless, unlike the officer in Wilhelm, Blye corroborated portions of the informant's testimony by actually visiting the site. While the officer's observations do not exactly mirror those of the informant, they are relatively close.

Second, while there are law enforcement officials that would not be familiar with the intricacies of a still and its component

---

[6]E.g., United States v. Bynum, 293 F.3d 192, 195 (holding that Leon's third circumstance requires a "less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place") (internal quotation marks omitted).

parts, there is nothing in the record that would cast any doubt on Byle's familiarity with such equipment. Finally, based on a close reading of the first affidavit, we hold that it does not contain any complex technical jargon necessitating specialized knowledge on the part of the magistrate.

Ultimately, we conclude that Blye's first affidavit is not "bare bones" because the facts in the affidavit are not "wholly conclusory" and as such, the magistrate could make an informed decision as to probable cause. Thus, we affirm the district court's decision as to this issue.

ii.

Varner also contends that the DEA agents' seizure of the glassware and chemicals from the state agents without court order or warrant, violated the Fourth, Ninth, and Tenth Amendments of the Constitution. In addition, Varner concludes that the state officials knew they were violating the law when they turned over the evidence to the federal officials.[7]

Varner's claim must fail because the transfer of evidence from state officers to the DEA is an issue of state law. In addition,

---

[7]The Government argues that we should dismiss this claim because it was never raised at the district court level or preserved pursuant to Varner's conditional plea agreement. The Government is incorrect because in Varner's motion to suppress, Varner clearly stated that the federal seizure of the evidence was "conducted without a warrant or court order." (J.A. 32-33.) In addition, as stated previously, Varner's plea agreement expressly reserved his right to appeal the district court's denial of his motion to suppress.

there is no evidence that the state officers colluded with the DEA officials in breaking state or federal law. As such, we must reject Varner's claim.

III.

Finally, Varner claims that the DEA violated his right to due process. Varner's due process allegation is a question of law subject to <u>de novo</u> review. <u>United States v. Blake</u>, 81 F.3d 498, 503 (4th Cir. 1996). Specifically, Varner argues that the DEA agents violated his constitutional right to due process when they authorized the destruction of potentially exculpatory evidence[8] (e.g., laboratory equipment, chemicals, glassware) in violation of 21 U.S.C. § 881(f)(2). The Government argues that (1) the DEA agents followed established DEA protocol for handling a suspected methamphetamine laboratory; (2) that the destroyed evidence did not possess any apparent exculpatory value; and (3) that the DEA agents did not act in bad faith. The district court denied Varner's motion because Varner had not proven that the destroyed glassware and chemicals were exculpatory, that the DEA agents were aware of

---

[8]Varner admits that the evidence was <u>potentially exculpatory</u> since the chemicals were never tested. This is a critical distinction since the Supreme Court has held that a due process violation occurs, regardless of good or bad faith, when the State suppresses or fails to preserve material exculpatory evidence. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

14

its exculpatory value, or that the DEA agents acted in bad faith by destroying the evidence.  (J.A. 251.)

Based on Varner's own admission, the chemicals seized were untested, and as such, they were only potentially exculpatory. (J.A. 35.)  In addition, while Varner claims that the glassware was unused, the Government contends that there is no evidence to support Varner's claim beyond the black and white pictures taken at the site.  Under applicable Supreme Court precedent, due process concerns are not implicated when potentially exculpatory evidence is destroyed "<u>unless a criminal defendant can show bad faith on the part of the police</u>."  <u>Illinois v. Fisher</u>, 540 U.S. 544, 548 (2004) (internal quotation marks and citations omitted) (emphasis in original).  In <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), the Court held that bad faith is evidenced "when the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant."  In other words, for due process concerns to arise in the instant case, the destroyed evidence must have some exculpatory value that the agents recognized, and yet nevertheless destroyed.

There is little doubt that the chemicals and glass potentially possessed exculpatory value.  Indeed, Varner's sole defense to the charge of manufacturing methamphetamine was that he used the laboratory to extract platinum from metal using acid in the fume hood.  (Appellant's Br. 38.)  Under <u>Youngblood</u>, even though this

15

evidence might have exonerated him, Varner must still provide evidence of bad faith on the part of the DEA agents. In doing so, Varner must show that the agents' actions manifested their knowledge that the evidence was potentially exculpatory. Varner argues that bad faith can be inferred by the fact that the DEA agents destroyed the evidence without explicit authorization from the Attorney General as per 21 U.S.C. § 881(f)(2). The Government contends, and the district court agreed, that even if the DEA agents violated this statute, the fact that the agents and laboratory personnel followed established protocol was sufficient to rebut any inference of bad faith.[9]

It is impossible, based on the evidence in the record, to discern what the DEA agents on site knew about the contents of the glassware and the identity of the chemicals in the sealed containers because the materials were not tested prior to their destruction. For Varner to demonstrate bad faith on the agents' part, he would have to show that (1) the agents knew that the chemicals were not methamphetamine, but rather an innocuous substance, or (2) the agents understood that the materials were not hazardous and destroyed them on the off chance that the chemicals

_____

[9]While the underlying assumption in both the Government's and district court's decision is that the DEA did follow established protocol in destroying the evidence, neither party introduced evidence of the DEA's methamphetamine protocol to the district court, and the district court did not take judicial notice of such a protocol.

16

were not methamphetamine. There is no evidence in the record supporting the existence of either of those scenarios. In addition, we agree with the district court that establishing a per se rule that would automatically imply bad faith on the part of officers upon violating 21 U.S.C. § 881(f)(2) would be imprudent.

Thus, under these circumstances, Varner's right to due process was not violated.

## IV.

For the reasons above, the district court's decision denying Varner's motions to suppress and dismiss is affirmed.

AFFIRMED