**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 26 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RONALD C. BLACK,

    Defendant-Appellant.

No. 97-1430
(D.C. No. 96-CR-380-Z)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BRORBY**, and **KELLY**, Circuit Judges.

Ronald C. Black appeals from his conviction and sentence for mail fraud in

violation of 18 U.S.C. § 1343.  Our jurisdiction arises under 28 U.S.C. § 1291 and

we affirm.

Background

This matter has its genesis in a scheme devised by Mr. Black to inveigle

funds from various financial institutions while he was in prison.  A prison

employee provided Mr. Black with a cellular telephone so that he could

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

implement his plan without being hampered by the monitoring feature on the prison's telephone system. Approximately two weeks after his first call, prison officials conducted a search of Mr. Black's person and cell, and found the cellular telephone and related items. On appeal, Mr. Black argues that the district court erred in (1) denying his motions to represent himself; (2) increasing the offense level based on a finding that more than minimal planning was required to complete the crime; (3) increasing the offense level based on an intended loss of $825,000; (4) finding that the "affecting a financial institution" language in 18 U.S.C. § 1343 was a sentence enhancement rather than an element of the crime charged; (5) denying his motion to suppress evidence and statements related to a warrantless search of his prison cell; and (6) denying his motion to dismiss based on a violation of the Interstate Agreement on Detainers.

Discussion

A.

Mr. Black first argues that the district court erred in denying his motions to represent himself. A criminal defendant has a constitutional and a statutory right to self-representation. See Faretta v. California, 422 U.S. 806, 836 (1975); 28 U.S.C. § 1654. To invoke this right, the defendant must (1) "clearly and unequivocally" assert his intention to represent himself, United States v. Reddeck, 22 F.3d 1504, 1510 (10th Cir. 1994); (2) in a timely manner, United States v.

Nunez, 877 F.2d 1475, 1478-79 (10th Cir. 1989); and (3) "knowingly and intelligently" relinquish the benefits of representation by counsel. United States v. McKinley, 58 F.3d 1475, 1481 (10th Cir. 1995). The defendant "should be made aware of the dangers and disadvantages of self-representation," Faretta, 422 U.S. at 835, and thus "the trial judge should conduct a thorough and comprehensive formal inquiry . . . on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." United States v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991).

Mr. Black's initial request to represent himself was clear and unequivocal and was timely asserted. However, after the district court advised him of the risks of proceeding without counsel, Mr. Black withdrew his request and voluntarily accepted substitute counsel of his own choice. The prosecutor sought to foreclose this issue on appeal by clarifying Mr. Black's intention: "It is in fact at [defendant's] request at this time that the Court seek other counsel for him rather than allowing him to go forward pro se?" 5 R. at 24-25. Mr. Black confirmed that he was withdrawing his request to represent himself. Thus, Mr. Black "withdrew or undermined [his] request so as to make it equivocal." McKinley, 58 F.3d at 1480. Further, our review of the record satisfies us that Mr. Black was not "browbeaten" by the court into accepting substitute counsel.

- 3 -

Less than two weeks before trial, Mr. Black again sought to represent himself, asking for a continuance so that he could prepare his own defense. Given that the trial had already been postponed three times, we find that the district court did not abuse its discretion in denying this request as untimely.  See United States v. Reddeck, 22 F.3d 1504, 1510-11 (10th Cir. 1994) ("Once the defendant has elected . . . to waive . . . the constitutional right to defend himself, he does not have an unlimited right to thereafter change his mind . . . ."); see also Morris v. Slappy, 461 U.S. 1, 11-12 (1983) ("[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.") (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).

B.

Mr. Black next argues that the district court erred in increasing the offense level based on a finding that more than minimal planning was required to complete the crime.  We review the district court's factual findings for clear error and its application of the Sentencing Guidelines de novo.  See United States v. Morales, 108 F.3d 1213, 1225 (10th Cir. 1997).  Thus, a sentencing court's determination of more than minimal planning is reviewed for clear error.

> To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the

> entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge.

Id. (quoting United States v. Torres, 53 F.3d 1129, 1144 (10th Cir. 1995)).

Mr. Black argues that the elements of 18 U.S.C. § 1343 necessarily involve planning and that the court improperly considered counts on which he had been acquitted. However, when determining a sentencing range, the Guidelines require a sentencing court to consider all "relevant conduct" in determining the applicable guideline range. Relevant conduct includes all acts that constitute the "offense of conviction," U.S.S.G. § 1B1.3(a)(1), as well as acts that are "part of the same course of conduct or common scheme or plan as the offense of conviction," id., § 1B1.3(a)(2), "regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts." United States v. Rutter, 897 F.2d 1558, 1562 (10th Cir. 1990); see also United States v. Kelly, 1 F.3d 1137, 1139 n.1 (10th Cir. 1993) ("The Tenth Circuit allows a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."). Relevant conduct need only be proven by a preponderance of evidence. See United States v. McKneely, 69 F.3d 1067, 1078 (10th Cir. 1995). After reviewing the record, we conclude that the district court's finding that Mr. Black engaged in more than minimal planning was not clearly erroneous and that the court correctly applied the Sentencing Guidelines.

C.

Mr. Black contends that the district court erred in increasing the offense level based on an intended loss of $825,000 because it was not possible for him to have received that amount.

Mr. Black relies upon United States v. Santiago, 977 F.2d 517, 524 (10th Cir. 1992), where we held that "whatever a defendant's subjective belief, an intended loss under Guidelines § 2F1.1 cannot exceed the loss a defendant in fact could have occasioned if his or her fraud had been entirely successful." The defendant in Santiago fraudulently filed an insurance claim for a stolen car and asked for $11,000 rather than its blue book value of $4,800. We concluded that the fair market value of what a defendant attempts to take defines the upper limit for loss valuation under U.S.S.G. § 2F1.1. However, in this case Mr. Black sought to obtain $825,000 and, but for some bad luck on his part, might have succeeded. The district court did not clearly err in finding that the loss would have been $825,000 if Mr. Black's fraud had been entirely successful and that such a loss was not impossible.

## D.

Mr. Black next asserts that the district court erred in sentencing him to more than five years, arguing that the "affecting a financial institution" language

in 18 U.S.C. § 1343[1] is an element of the crime charged, which was not proven by the government beyond a reasonable doubt, rather than a sentence enhancement. In addition, he raises a due process claim in that he was not informed prior to trial that the government would seek a sentence beyond five years.

We review questions of statutory construction de novo. See United States v. Oberle, 136 F.3d 1414, 1423 (10th Cir.), cert. denied, __S. Ct.__, 1998 WL 396485 (1998). When interpreting a criminal statute, we begin with the plain language of the statute itself, and if the terms are unambiguous, our inquiry normally ends. See United States v. Romero, 122 F.3d 1334, 1337 (10th Cir. 1997), cert. denied, 118 S. Ct. 1310 (1998). We do not find the plain language of § 1343 to be ambiguous. The second sentence, which authorizes a more severe penalty if the scheme affects a financial institution, clearly refers back to the first sentence as the "violation" of the statute. See United States v. Galbraith, 20 F.3d 1054, 1056 (10th Cir. 1994) ("The elements of the crime of wire fraud are 1) a

---

[1] Section 1343 provides:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

scheme to defraud, and 2) use of interstate wire communications to facilitate the scheme."); see also United States v. Bouyea, 152 F.3d 192, 195 (2d Cir. 1998) (under 18 U.S.C. § 1343, "effect on financial institution not an element of the offense, but where 'violation affects a financial institution' heightened penalties apply").

Our decision in United States v. Browning, 61 F.3d 752 (10th Cir. 1995), disposes of Mr. Black's due process claim. There, like Mr. Black, the defendant only received notice of the possibility of an enhanced sentence through the presentence report and thus only had opportunity to object prior to sentencing. We stated that "[t]he question of whether this notice was sufficient turns . . . on the question of whether [the penalty provision] constitutes a separate offense of conviction or merely a sentencing enhancement." Id. at 756. Since we find here that the "affecting financial institutions" language is merely for sentencing enhancement, there is no due process violation.

E.

Mr Black next asserts that the district court erred in denying his motion to suppress evidence and statements related to the search of his prison cell. We review the reasonableness of a warrantless search de novo, accepting the trial court's findings of fact unless they are clearly erroneous. See United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1229 (10th Cir.), cert. denied, __ S. Ct.__,

1998 WL 424247 (1998). We view the evidence in the light most favorable to the prevailing party. See United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995).

The Supreme Court has held that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." Hudson v. Palmer, 468 U.S. 517, 530 (1984); see also Dunn v. White, 880 F.2d 1188, 1191 (10th Cir. 1989). Mr. Black urges this Court to carve out an exception to this principle where the search was neither routine nor related to prison security. However, this would conflict with our precedent in Dunn, and thus we affirm the district court's denial of Mr. Black's motion to suppress evidence.

Likewise, there is no merit in Mr. Black's assertion that the district court erred in denying a motion to suppress a statement made during an interrogation on July 26, 1993. While it is true that a Miranda warning was not given, Mr. Black had been advised of his Miranda rights during two previous interrogations three days earlier, and on this occasion he was asked if he remembered his Miranda rights. Mr. Black replied that he did, and indicated that they were not necessary and that he wanted to talk. Although the district court was concerned about the lack of a Miranda warning on July 26, it concluded that the Constitution does not require that a defendant "be advised every 15 minutes or even every day if one is

well advised and remembers being advised and the interviews continue." 4 R. 103. Although this circuit has not considered when a warning becomes "stale" due to the passage of time, other circuits have accepted that fresh warnings are not required after a few hours or a few days. See People of the Territory of Guam v. Dela Pena, 72 F.3d 767, 769 (9th Cir. 1995) (fifteen hours); Biddy v. Diamond, 516 F.2d 118, 121 (5th Cir. 1975) (twelve days); Maguire v. United States, 396 F.2d 327, 330 (9th Cir. 1968) (three days). Other than the passage of time, Mr. Black points to nothing to suggest the effectiveness of the earlier warnings was diminished. In addition, the officer reminded him of the earlier warnings. Accordingly, we hold that the district court did not err in denying Mr. Black's motion to suppress statements made during that interrogation.

F.

Mr. Black finally contends that the district court erred in denying his motion to dismiss based on a violation of the Interstate Agreement on Detainers (IADA), 18 U.S.C. App. 2, § 2, Art. IV(a). He argues that the required thirty day waiting period under Art. IV(a) could not be waived unilaterally. We review questions of statutory interpretation de novo, see Oberle, 136 F.3d at 1423, and find no merit in this contention.

The IADA "prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the

prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." United States v. Mauro, 436 U.S. 340, 343 (1978). Article IV of the IADA is triggered when there is "a written request for temporary custody" by the prosecutor, art. IV(a), and article III "allows a prisoner to initiate proceedings for his transfer to another jurisdiction for trial." Yellen v. Cooper, 828 F.2d 1471, 1473 (10th Cir. 1987). In this case, there never was a presentation of a written request–the district court issued a writ of habeas corpus ad prosequendum, but the writ was never filed with the Ohio prison authorities. Thus the provisions of article IV were never triggered. Instead, a detainer was filed and Mr. Black requested a transfer to Colorado according to the provisions of article III. Even if article IV applied, we have previously held that it is possible to waive rights under the IADA. See Yellen, 828 F.2d at 1474; see also United States v. Scheer, 729 F.2d 164, 171-72 (2d Cir. 1984). By requesting a transfer pursuant to article III, Mr. Black waived any rights he may have had under article IV.

AFFIRMED

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 11 -