**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                            No. 97-4913

CHRISTIAN E. UBAKANMA,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                             No. 97-4914

CHIDOZIE ONYEKONWU, a/k/a Charles
Thomas,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-97-108-PJM)

Argued: May 3, 2000

Decided: June 12, 2000

Before NIEMEYER, TRAXLER, and KING, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Judge King wrote the opinion, in which Judge Niemeyer and Judge
Traxler joined.

_____

**COUNSEL**

**ARGUED:** Marc Lanny Resnick, Washington, D.C., for Appellant Ubakanma; Robert Thomas Durkin, Jr., Baltimore, Maryland, for Appellant Onyekonwu. David Ira Salem, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

In these consolidated actions, Christian Ubakanma and Chidozie Onyekonwu appeal their convictions and sentences in the District of Maryland, following their guilty pleas to a single count of wire fraud, in violation of 18 U.S.C. § 1343. The plea agreements stipulated facts detailing the defendants' respective roles in a fraud scheme involving solicitations for investments in a fictitious contract with the Nigerian government.

For the reasons explained below, we affirm Ubakanma's conviction and sentence of thirty months in custody and three years of supervised release. However, we vacate the district court's order that Ubakanma pay $5,400 in restitution, and we remand this aspect of his case for further proceedings. We likewise affirm Onyekonwu's wire fraud conviction. However, we vacate his sentence of forty-six months of incarceration and five years of supervised release, as well as the order that he pay $12,000 in restitution. We also remand Onyekonwu's case for further proceedings.

I.

Each of the defendants challenges the validity of his guilty plea to wire fraud. We review their challenges in turn.

A.

Shortly after entering his guilty plea in August 1997, but before sentencing, Ubakanma wrote the court requesting that his plea be

withdrawn and that new counsel be appointed. He asserted that he is innocent and that he had pleaded guilty due to his attorney's intimidation and poor advice. The district court denied this motion without a hearing. Ubakanma asserts on appeal that the court erred in denying his requests to withdraw his guilty plea and for appointment of new counsel.

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. See United States v. Brown , 617 F.2d 54 (4th Cir. 1980). There is no absolute right to withdraw a guilty plea, see United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), thus the defendant has the burden of showing a fair and just reason for withdrawal. See id.; see also United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995) (a "fair and just" reason is one that"essentially challenges" the fairness of a proceeding under Fed. R. Crim. P. 11). In determining whether a defendant has met his burden, courts consider multiple factors: (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.[1] See Moore, 931 F.2d at 248.

On the first factor, the record reflects that the district court conducted a thorough and comprehensive Rule 11 hearing prior to accepting Ubakanma's guilty plea. In that proceeding, Ubakanma acknowledged under oath that the factual stipulations underlying his plea (and read into the record in open court) were true. He stated, among other things, that no one had coerced him into pleading guilty and that he was in fact guilty of the wire fraud offense. Ubakanma was advised of the essential terms of the plea agreement, and he asserted under oath that he understood them. The court reviewed the

_____

[1] Mr. Ubakanma does not challenge factors (5) and (6) (prejudice and inconvenience). In addition, the court weighed factor (3) (length of delay) in favor of Ubakanma. Therefore, only the district court's findings on factors (1), (2), and (4) -- and its ultimate weighing of all the factors -- are the subject of this appeal.

maximum permissible sentence on the wire fraud conviction, and Ubakanma acknowledged that he understood. The court also advised Ubakanma of the constitutional rights being waived by his guilty plea, and he again indicated his understanding. In these circumstances, Ubakanma's conclusory post-plea assertions that his plea was not knowing and voluntary, made in his unsworn letter to the court, fail to overcome the barrier of the sworn statements made at his Rule 11 hearing. We therefore agree with the district court in weighing this factor in favor of the Government.

As to the second factor, Ubakanma conclusorily asserts his legal innocence. In light of his contrary statements during the Rule 11 proceeding, we also agree with the district court that this factor weighs strongly in favor of the Government.

As to the fourth factor, our analysis is informed by the standard that when a defendant alleges ineffective counsel as the sole basis for a motion to withdraw his guilty plea, he must establish: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989) (citation omitted). In this regard, the district court found that Ubakanma's counsel "filed and litigated pretrial motions and aggressively negotiated a disposition which, when viewed in light of the alternatives, was quite favorable for Defendant."**2** Ubakanma's conclusory claims that he was "misinformed" or"intimidated" into pleading guilty are insufficient to overcome the district court's findings and Ubakanma's sworn statements that he was not coerced. Further, Ubakanma acknowledged that he had received a copy of the written plea agreement prior to the plea proceedings; that the contents of the plea agreement were accurate; and that he had knowingly and voluntarily signed the agreement. In addition, the plea agreement clearly provides that Ubakanma had read and carefully reviewed it

_____

**2** The district court implicitly denied Mr. Ubakanma's motion for substitution of counsel on the same grounds, which we cannot say was an abuse of discretion. See United States v. Mullen , 32 F.3d 891, 895 (4th Cir. 1994) (identifying factors relevant to whether a district court abused its discretion by denying a defendant's motion to substitute counsel).

4

with his attorney, that he understood its provisions, and that he voluntarily agreed to its terms. In these circumstances, we agree with the district court that this factor also weighs in favor of the Government.

Combining the six <u>Moore</u> factors, only one-- the timeliness of Mr. Ubakanma's motion to withdraw his plea -- weighs in his favor. Therefore, on this record, we cannot conclude that the district court abused its discretion in denying the motion. We therefore affirm Mr. Ubakanma's conviction on his plea of guilty.

B.

The other defendant, Mr. Onyekonwu, raises a post-sentencing challenge to his conviction by guilty plea. In this circumstance, reversal is warranted only if the plea proceedings were marred by a fundamental defect that inherently resulted in a complete miscarriage of justice, or in omissions inconsistent with rudimentary demands of fair procedure. <u>See United States v. Miranda-Santiago</u>, 96 F.3d 517, 522 n.9 (1st Cir. 1996). We have thoroughly reviewed the record, along with the written and oral arguments, and we conclude that Onyekonwu fails to identify any deficiency in the Rule 11 hearing conducted in the district court. We therefore affirm Onyekonwu's conviction.

II.

We next consider the issues raised by the defendants concerning their sentences. First, we consider issues on custodial (imprisonment and supervised release) conditions imposed by the district court, and we then address the requirements that the defendants are to make restitution payments.

A.

1.

Mr. Onyekonwu first asserts that he pleaded guilty to a class D wire fraud felony, which carries a statutory maximum of five years imprisonment, rather than to a class B felony, which provides for a

5

thirty year statutory maximum. As a result, he argues, the district court sentenced him to excessive imprisonment and supervised release. The resolution of this issue turns on whether Onyekonwu's wire fraud conviction "affect[ed] a financial institution." The wire fraud statute under which Onyekonwu was convicted provides, in pertinent part, as follows:

> Whoever . . . [commits wire fraud] shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343 (emphasis added). Both the Supreme Court and this court have concluded that a statutory aggravating circumstance constitutes an offense element for purposes of conviction and sentence. See, e.g., Jones v. United States, 526 U.S. 227, 251 (1999) (construing carjacking statute with aggravating facts to create distinct offenses, where the statute provides for substantially increased punishment in the presence of those facts); United States v. Davis, 202 F.3d 212, 217 (4th Cir. 2000) (construing property destruction statute with aggravating facts to create distinct offenses). We also conclude, in this situation, that the aggravating circumstance available here -- whether the wire fraud crime "affects a financial institution" -- constitutes an offense element and thereby creates a distinct wire fraud offense.[3]

The stipulated facts underlying the wire fraud offenses, set forth in each of the plea agreements, demonstrate that the funds involved in the fraud scheme were transferred into and out of accounts at various financial institutions. However, there are no facts indicating that the financial institutions themselves were harmed or victimized in any way, or that they were intended to be so harmed or victimized by the

_____

[3] We are unpersuaded by the Second Circuit's decision to the contrary, as its decision was rendered prior to the Supreme Court's decision in Jones. See United States v. Bouyea, 152 F.3d 192, 195 (2d Cir. 1998) (stating that effect on a financial institution is not an element of a § 1343 offense), see also United States v. Black, No. 97-1430, 1998 WL 745986, **3 (10th Cir. Oct. 26, 1998) (table) (same, citing Bouyea, 152 F.3d 192).

6

fraud scheme. The district court correctly concluded during Ubakanma's sentencing hearing that a wire fraud offense under section 1343 "affected" a financial institution only if the institution itself were victimized by the fraud, as opposed to the scheme's mere utilization of the financial institution in the transfer of funds. See Bouyea, 152 F.3d at 195 (parent financial institution was sufficiently directly "affected" for § 1343 purposes by fraud against its wholly-owned subsidiary, although the subsidiary was not a "financial institution"); United States v. Pelullo, 964 F.2d 193, 215 (3d Cir. 1992) (same); United States v. Briggs, 939 F.2d 222, 224 (5th Cir. 1991) (gravity of fraud in the banking system reflected by Congress's enactment of expanded protections against defrauding financial institutions, including the greatly enhanced penalty for § 1343 offenses affecting such institutions).[4]

The Government has now conceded that the absence of facts showing that the fraud scheme in some way victimized or affected a financial institution requires us to conclude that the wire fraud offense to which Onyekonwu pleaded guilty is a class D felony rather than a class B felony. Where a statute fails to classify the letter grade of the offense, as with the wire fraud statute, a general classification system based on the statutory maximum term of imprisonment applies. See 18 U.S.C. § 3559(a). Pursuant to section 3559(a), an offense with a maximum term of imprisonment of more than twenty-five years and less than life imprisonment is a Class B felony. Id. On the other hand, an offense with a maximum term of imprisonment of less than ten years but five or more years is a Class D felony. Id.

_____

[4] A parallel Guidelines provision has been construed in a similar fashion. Cf. United States v. Bennett, 161 F.3d 171, 192-93 & n.12 (3d Cir. 1998) (applying four-level enhancement under § 2F1.1(b)(7)(B) when fraud "affected the financial institution" by exposing it to liability); United States v. Johnson, 130 F.3d 1352, 1355 (9th Cir. 1997) (same, when embezzlement "affected" a bank by causing it legal expenses and by damaging its reputation, its employees' morale, and its customer relations); United States v. Schinnell, 80 F.3d 1064, 1070 (5th Cir. 1996) (same, where forgery "realistically exposed [banks] to substantial potential liability"); United States v. Mizrachi , 48 F.3d 651, 656 (2d Cir. 1995) (same, construing "affecting" a financial institution to require victimization of the institution).

In this case, we accordingly conclude that Onyekonwu pled guilty and was convicted of a Class D wire fraud felony (with a five year maximum term of imprisonment), rather than the thirty year maximum Class B wire fraud felony.

2.

A term of supervised release of "not more than three years" is authorized for conviction of a Class D felony, while"not more than five years" of supervised release is authorized for a Class B felony conviction. See 18 U.S.C. § 3583(b). In this case, the district court sentenced Onyekonwu to a five year term of supervised release. The Government concedes that this order constitutes an incorrect application of law. Finding ourselves in agreement with this concession, we must remand for resentencing of Onyekonwu under the Class D felony provisions.[5]

B.

The district court ordered Ubakanma and Onyekonwu to make restitution to the Government of $5,400 and $12,000, respectively. In each instance, the court waived imposition of a fine based on "inability to pay."

1.

Onyekonwu asserts on appeal that his restitution order is unlawful, because the Government was not a victim of the wire fraud scheme. However, since Onyekonwu did not object to the restitution order at the sentencing hearing, our review is limited to plain error. See United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995).

_____

[5] The term of supervised release imposed on Onyekonwu confirms that the district court incorrectly relied on the Government and the plea agreement and viewed the statutory maximum as thirty years. This incorrect view of the applicable statutory maximum may have contributed to the district court's imposition of the maximum term of imprisonment permitted under the Sentencing Guidelines, incarceration for a period of forty-six months. Since this aspect of the sentence could have been affected by an erroneous reliance on the incorrect statutory maximum penalty, we vacate Onyekonwu's sentence in this respect as well.

The Government contends that the restitution order should not be disturbed absent abuse of discretion, and that none occurred here because Onyekonwu pled guilty to conduct that included a $30,000 fraudulent transaction with a specifically named victim in the United Arab Emirates. See United States v. Blake, 81 F.3d 498, 505 & n.3 (4th Cir. 1996) (restitution orders reviewed for abuse of discretion). The Government continues, without citation to authority, that "the statute does not require that the government have suffered the loss," and it also contends that it would receive the restitution payments in trust for unidentified victim(s).**6**

The Government's position must be rejected. In sentencing a defendant convicted of wire fraud, the court may order restitution made "to any victim of such offense, or if the victim is deceased, to the victim's estate," pursuant to the Victim and Witness Protection Act of 1982 ("VWPA"). See 18 U.S.C.§ 3663(a)(1)(A); see also 18 U.S.C. § 3612(b)(1)(G) (requiring a judgment imposing restitution of more than $100 to include information sufficient to identify each victim to whom restitution is owed). If the plea agreement so provides, the court may also order restitution to persons other than the victim of the offense. See 18 U.S.C. § 3663(a)(1)(A), (a)(3). Significantly, there is no such provision in this case. Moreover, the statute defines "victim" as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as

_____

**6** Specifically identifying the victim(s) in a restitution order is necessary because the order creates a property interest in the restitution for the victim. At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the order. 18 U.S.C. § 3664(m)(1)(B). Upon its recording, the abstract of judgment is a lien on the property of the defendant in the same manner and to the same extent as a judgment of a court of general jurisdiction in the state. Id. Also, a victim may at any time assign his interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments. 18 U.S.C. § 3664(g)(2).

9

an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(B)(2), see also Blake , 81 F.3d at 506 n.5 (concluding that the term "victim" is very narrowly defined under the VWPA). The VWPA also authorizes restitution only for losses traceable to the offense of conviction. See United States v. Broughton-Jones, 71 F.3d 1143, 1145 (4th Cir. 1995). Under the statute, the Government has the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e). In addition, in making a restitution award, the court must consider various factors, including the amount of loss sustained by the victim, the financial resources of the defendant, the financial needs and earning ability of the defendant and his dependants, and such other factors as the court deems appropriate. See Blake, 81 F.3d at 505. A district court's statement that it waives a fine because of the defendant's inability to pay suggests that the defendant also cannot make restitution. See United States v. Piche, 981 F.2d 706, 718 (4th Cir. 1992). A court's failure to make findings on these factors mandates a remand in this respect.[7] Id.

The district court failed to make the statutorily mandated findings of the actual losses suffered by the victim(s) of the offense to which Onyekonwu pleaded guilty, or to make any specific finding on Onyekonwu's assets.[8] See Blake, 81 F.3d at 505. It is clear that a gen-

_____

[7] While the sentencing court may satisfy this duty by adopting a Presentence Report that contains adequate factual findings to allow effective appellate review, see, e.g., Castner, 50 F.3d at 1277, no such adoption occurred here. Onyekonwu's Presentence Report makes no recommendation as to restitution; it merely notes that "the government maintains a loss of approximately $5,000,000 in this case." It also states that "[t]he victim's [sic] names and loss amounts are forthcoming."

[8] The victim(s) of Onyekonwu's offense and the amount of their actual losses were not mentioned at his sentencing hearing, and there was no finding that the restitution was specifically ordered for losses traceable to the offense of conviction. In fact, the record indicates that the Government recovered approximately $1.4 million related to the fraud scheme.

10

eral restitution order payable to the Government, such as we have here, is contrary to the provisions of the VWPA, which only authorizes a district court to grant a future property right to a victim. See supra note 6. The narrow statutory exceptions to this rule do not apply in this case. An order that a defendant make restitution to the Government rather than to a victim improperly converts that purported restitution payment into a fine. Cf. 18 U.S.C. § 3572(b) (providing that a fine or other monetary penalty may not impair the ability of a defendant's obligation to make restitution to a victim who is other than the United States). We find no indication in the record that specific victims have either assigned any property interests to the Government or have authorized the Government to act as their trustee.

Four conditions must be met to correct plain error: there must be (1) an error, such as a deviation from a legal rule; (2) the error must be plain; (3) it must affect substantial rights; and (4) it must seriously affect the fairness, integrity, or public reputation of judicial proceedings. See, e.g., Davis, 202 F.3d at 216 n.5; Castner, 50 F.3d at 1277. We have determined that the restitution order deviated from a legal rule and we find such deviation to be plain. Onyekonwu's substantial rights are clearly affected by the restitution order, and we conclude that the erroneous order affects the fairness of the judicial proceedings. We therefore find plain error in regard to Onyekonwu's order of restitution.

We must accordingly vacate the district court's order of restitution and remand for further proceedings, including appropriate findings on the amount of the loss sustained by the victim(s), on Onyekonwu's

_____

The plea agreement provides that Onyekonwu caused a specifically named Omani businessman to wire $30,000 to a Maryland bank account in December 1995; it also generally states that conduct by the defendant and the entire conspiracy caused a total loss of $5 million. At Onyekonwu's Rule 11 proceeding, he agreed that he engaged in the fraud scheme involving the Omani businessman's $30,000. At his sentencing hearing, however, there was no discussion of victims' identities or amounts of actual loss caused by the offense of conviction. The absence of findings precludes effective review on appeal. See Blake , 81 F.3d at 505.

11

ability to pay, and also on the identification of the victim(s) who are to receive restitution.

2.

For the reasons explained above with respect to Onyekonwu, <u>supra</u> at Section II.B.1, and because we resolve the identical issue in favor of his co-appellant, we conclude that we should also vacate Ubakanma's restitution order, though no such error has been asserted by his counsel. <u>See Silber v. United States</u>, 370 U.S. 717, 718 (1962) (appellate courts may on their own motion notice errors to which no exception has been taken, if they are obvious or if they otherwise seriously affect the fairness of the proceedings). Ubakanma's Presentence Report states that the "amount of restitution attributable to the defendant has not been established to date." His plea agreement notes that a "French victim" (who was specifically named in the indictment) was defrauded of $200,000 as a result of Ubakanma's conduct. At his Rule 11 proceeding, Ubakanma agreed that these facts were correct.

However, at Ubakanma's sentencing hearing, the district court expressed its belief that Ubakanma was lying about his assets and that he possessed money somewhere. The court made no findings on the losses actually incurred by any victim, but assumed that Ubakanma could earn $150 monthly for a thirty-six month period, for a total restitution of $5400. The district court also waived imposition of a fine, based on Ubakanma's "inability to pay." Ubakanma's Presentence Report does not provide any information concerning his earning capacity, and no other evidence was provided on this point at the sentencing hearing. We therefore vacate Ubakanma's restitution order and remand for such further proceedings as may be appropriate.

III.

Pursuant to the foregoing, we affirm Mr. Ubakanma's conviction and sentence of incarceration and supervised release. However, we vacate the district court's order of restitution and remand for further proceedings.

We also affirm Mr. Onyekonwu's conviction for wire fraud. However, we vacate the district court's sentence of incarceration, super-

12

vised release, and restitution, and we remand for further proceedings.

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED</u>

13