**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 05-4996**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM ADRIAN DUNGEE,

Defendant - Appellant.

───────────

**No. 05-5080**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MONTA OLANDER JORDAN,

Defendant - Appellant.

───────────

Appeals from the United States District Court for the Eastern
District of Virginia, at Richmond.  Robert E. Payne, District
Judge.  (CR-05-17)

───────────

Submitted:  April 11, 2007          Decided:  May 31, 2007

───────────

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

--------

Affirmed by unpublished per curiam opinion.

--------

Michael S. Nachmanoff, Acting Federal Public Defender, Frances H. Pratt, Research and Writing Attorney, Alexandria, Virginia; Steven P. Hanna, Richmond, Virginia, for Appellants. Chuck Rosenberg, United States Attorney, Sara E. Flannery, Assistant United States Attorney, Maciek J. Kepka, Third Year Intern, Richmond, Virginia, for Appellee.

--------

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Adrian Dungee and Monta Olander Jordan both pled guilty to assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(b)(6), 2 (2000), a charge that resulted from their participation, with another defendant, in an attack on a fellow inmate at the Federal Correctional Institution at Petersburg, Virginia. The official investigation of the incident determined that Clarence Jefferson, who was an orderly in the visiting room, had agreed to retrieve a package of marijuana left in the visitors' ladies' room for another inmate, Chatyn Byrd. The marijuana was found first by prison staff and replaced with a dummy package. This led Byrd to believe that Jefferson had stolen the marijuana, which resulted in the attack on Jefferson in the exercise yard. Prison authorities searched the yard immediately following the attack and found Jefferson's tooth and slivers from the crutch used to beat him, but no other weapons. All the inmates in the area were segregated and questioned, first by prison investigators, and soon afterward by an agent from the Federal Bureau of Investigation (FBI).

Dungee seeks to appeal the restitution order that requires him to pay $1611.86 to the Bureau of Prisons (BOP) for medical expenses incurred on behalf of Jefferson pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C.A. § 3663A (West 2000 & Supp. 2006), and 18 U.S.C. § 3664 (2000). The government

has moved to dismiss Dungee's appeal based on the waiver of appeal rights in his plea agreement. As explained below, we deny the motion to dismiss and affirm the restitution order. Jordan appeals the district court's denial of his motion to withdraw his guilty plea and asserts additional claims in his pro se supplemental brief. We conclude that the district court did not abuse its discretion in denying Jordan's motion to withdraw his guilty plea and that his pro se claims are without merit, and we affirm his conviction and sentence.

Because the waiver provision in Dungee's plea agreement made no explicit reference to restitution, and the record of the guilty plea colloquy does not reveal any discussion of a waiver of appellate rights concerning restitution, we will consider Dungee's challenge to the restitution order on the merits. Dungee argues that the district court erred (1) in ordering him to pay anything more than a nominal amount of restitution, see 18 U.S.C. § 3664(f)(3)(B); (2) in awarding restitution to the BOP because it is not a victim as the term is defined in § 3663A; and (3) in failing to make findings concerning his financial circumstances before determining the payment schedule as required under § 3664(f)(2).

Dungee did not raise these objections in the district court. Therefore his claims are reviewed for plain error. See United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005). Under

the plain error standard, Dungee must show that: (1) there was error; (2) the error was plain; and (3) the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732-34 (1993). Even when these conditions are satisfied, this court may exercise its discretion to notice the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks omitted).

Dungee first contends that the BOP is not a "victim" within the meaning of § 3663A. Under the MVRA, the district court may order a defendant to pay restitution to any victim of an offense of conviction. See 18 U.S.C.A. § 3663A(a)(1); United States v. Newsome, 322 F.3d 328, 340 (4th Cir. 2003) (noting that district court has authority to order restitution for "all identifiable victims"). An individual is a victim under § 3663A if he is "a person directly or proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." § 3663A(a)(2). This includes third parties otherwise responsible for the costs of assisting a principal victim. United States v. Johnson, 400 F.3d 187, 200-01 (4th Cir.) (citing United States v. Cliatt, 338 F.3d 1089, 1091 (9th Cir. 2003)), cert. denied, 126 S. Ct. 134 (2005). Dungee attempts to distinguish his case from Johnson on the ground that it involved payment to a private agency, whereas the BOP was required to provide for

Jefferson's medical care. We cannot agree. The medical expenses incurred by the BOP for Jefferson's care clearly fall within the scope of expenses incurred by third parties otherwise held responsible for the costs of recovery. <u>Johnson</u>, 400 F.3d at 200; <u>see also</u> 18 U.S.C. § 3664(j)(1) (providing that restitution is applicable to those entities that "provide[] or [are] obligated to provide the compensation" to make a victim whole). Therefore, we conclude that the district court did not plainly err in ordering Dungee to make restitution to the BOP for Jefferson's medical care.

Dungee also asserts that the district court failed to make findings concerning his ability to pay, as required under § 3664. The MVRA provides that the restitution amount to each victim shall be "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The MVRA further requires that the court, after ordering full restitution, "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," taking into account "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant[,] including obligations to dependents." 18 U.S.C. § 3664(f)(2). The district court therefore was required to consider Dungee's

financial condition under the MVRA in fashioning a payment schedule.

Dungee is correct that the district court erred in failing to make the required findings linking the schedule of restitution payments to his financial condition. Nor did the district court explicitly adopt the presentence report, which discussed Dungee's financial condition and inability to pay a fine. See United States v. Karam, 201 F.3d 320, 330 (4th Cir. 2000) (adoption of presentence report that contained sufficient facts to support restitution order avoided plain error). However, we are not convinced that Dungee has demonstrated that the error affected his substantial rights. The amount of restitution ordered was nominal, see § 3664(f)(3)(B), even though the district court did not specifically identify the $25 monthly payments as a nominal sum. Moreover, Dungee has not shown that a different amount or schedule of payments would have resulted if the district court had articulated findings regarding his financial condition. See United States v. Bollin, 264 F.3d 391, 420 (4th Cir. 2001). Therefore, we will uphold the restitution order as not plainly erroneous.

Jordan pled guilty on July 19, 2005, the day before he was scheduled to go to trial, and also the day the government filed a superseding indictment which charged him with influencing a prospective witness to provide false testimony and bribery of a witness. The district court offered Jordan the option of taking a

- 7 -

day to think over his change of plea, but Jordan declined the offer. Jordan indicated that he was ready to enter his plea and to stipulate that the government could prove that he had obstructed justice.* In his interview with the probation officer following his guilty plea, Jordan stated that he took a knife away from Jefferson during a fight between Jefferson and Dungee and hid the knife in grass in the recreation yard. He admitted hitting Jefferson a few times because, he said, he was upset that Jefferson had involved him in his argument with Dungee.

Three months later, Jordan moved to withdraw his guilty plea, claiming that his plea had not been knowing and voluntary because he was hurried and under pressure when he entered it, and because the district court failed to ask whether he understood that he was waiving his right to collaterally attack his sentence. Jordan also asserted his legal innocence, claiming that he had acted in self-defense after Jefferson pulled a knife on him, and that his claim was supported by a knife prison officials found buried in the dirt, several weeks after the assault, in the same area of the prison yard. He complained that he had not been provided with copies of the prison interviews of inmates Veney, Goodman, and Robertson, who allegedly witnessed the assault,

_____

*The evidence of obstruction consisted of tapes of two recorded phone calls Jordan made from prison.

although he did receive summaries of the FBI interviews of the same inmates conducted shortly after the attack.

At a hearing on the motion, a review of Jordan's plea agreement established that Jordan had not waived his right to collaterally attack his conviction or sentence. The government also questioned Jordan about the telephone call recorded on June 16, 2005, in which Jordan told a third party that "Munch" (Dungee) would be called as a witness and that Dungee should say that the victim had "a tool," that is, a knife. The district court denied Jordan's motion to withdraw his guilty plea, finding that Jordan had not met his burden of showing a fair and just reason for withdrawal under the six-factor test set out in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). The court found no credible evidence of Jordan's legal innocence or that Jordan's guilty plea was not knowing and voluntary, that Jordan had been appropriately advised at the Fed. R. Crim. P. 11 hearing about the waiver of appellate rights in his plea agreement, and that the three-month delay between entry of the plea and the motion to withdraw was significant.

We review the denial of Jordan's motion to withdraw his guilty plea for abuse of discretion. United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000). The defendant bears the burden of showing a "fair and just reason" for the withdrawal of his guilty plea. Fed. R. Crim. P. 11(d)(2)(B). "[A] 'fair and just'

reason . . . is one that essentially challenges . . . the fairness of the Rule 11 proceeding . . . ." United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc). Courts consider six factors in determining whether to permit the withdrawal of a guilty plea:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

Ubakanma, 215 F.3d at 424 (citing Moore, 931 F.2d at 248) (footnote omitted). An appropriately conducted Rule 11 proceeding, however, "raise[s] a strong presumption that the plea is final and binding." Lambey, 974 F.2d at 1394. Our review of the record discloses that the district court did not abuse its discretion in denying Jordan's motion.

In his pro se supplemental brief, Jordan asserts that the government failed to disclose to him in discovery the summaries of interviews conducted by prison authorities of Goodman, Veney, and Robertson. Jordan states that they would have been the principal government witnesses against him had he gone to trial, and that the interviews conducted by prison authorities would have provided him with impeachment evidence to support his self-defense claim.

When Jordan raised this issue at the hearing on his motion to withdraw his guilty plea, his attorney informed the court that the government had learned that interviews of Goodman, Veney, and Robertson by prison authorities did not exist. Jordan has attached to his pro se brief a letter from the BOP, apparently in response to his post-sentencing request for interviews of the three inmates under the Freedom of Information Act, which indicates that three pages corresponding to his request had been located, but would be withheld under 5 U.S.C. § 552(b)(6), (b)(7)(c), and (b)(7)(F) (2000). These sections exempt from disclosure certain materials to avoid an unwarranted invasion of personal privacy or the endangerment of an individual's life or physical safety.

Even if interview forms of some sort exist for the three inmates, as it appears they do, Jordan has not demonstrated that they actually contain any exculpatory or impeachment information that would have been helpful to his defense. This is particularly true in light of the fact that he was provided with summaries of the FBI agent's interviews of the same inmates which were done a short time after prison authorities conducted their initial interviews. Therefore, we find no basis for his claim of prosecutorial misconduct.

Moreover, Jordan's arguments going to the factual basis for his conviction are also unavailing because his guilty plea to the charges constitutes an admission to the material elements of

the crime. A knowing and voluntary guilty plea "conclusively establishes the elements of the offense and the material facts necessary to support the conviction," and "constitutes a waiver of all nonjurisdictional defects," such as claims of actual innocence. United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Also in his pro se brief, Jordan claims error in the district court's decision not to award him an adjustment for acceptance of responsibility. The sentencing transcript is not contained in the materials submitted on appeal. However, at the Rule 11 hearing, Jordan admitted conduct that constituted obstruction of justice. If, as Jordan alleges, he did not receive an adjustment for acceptance of responsibility, the court's decision did not amount to clear error.

We therefore deny the government's motion to dismiss Dungee's appeal and affirm the judgment in Dungee's case, including the restitution order. We affirm the district court's decision to deny Jordan's motion to withdraw his guilty plea, and affirm Jordan's conviction and sentence. We grant Jordan's motion for leave to file a pro se supplemental brief, but deny his motions for new counsel and for leave to proceed pro se. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED