**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4965**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

ANTOINE DEMETRIUS LUNDY, a/k/a Buff,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:12-cr-00106-RGD-DEM-3)

Argued:  January 28, 2015          Decided:  March 10, 2015

Before KING and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jon Michael Babineau**,** RIDDICK BABINEAU, PC, Norfolk, Virginia, for Appellant.  Benjamin L. Hatch, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.  **ON BRIEF:** Dana J. Boente, United States Attorney, Alexandria, Virginia, Darryl J. Mitchell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In January 2013, Appellant-Defendant Antoine Lundy pleaded guilty to two federal offenses. Four months later, on the day before he was scheduled for sentencing, Lundy moved to withdraw his plea. He claimed that he was legally innocent and had pleaded guilty only to protect his wife from prosecution. After delaying Lundy's sentencing and holding a two-day hearing, the district court denied Lundy's motion to withdraw. On appeal, we affirm that decision.

I.

A.

This case arises from a 2012 law-enforcement sting of cocaine dealers in Norfolk, Virginia. Law enforcement used an undercover informant ("the informant") to conduct a series of controlled purchases. On multiple occasions, the informant bought cocaine from Willard Perry and Sherman Henderson.

On March 20, 2012, the informant arranged to buy a half-ounce of cocaine from Perry at the informant's residence. Soon after talking with Perry, however, the informant received a phone call from Appellant-Defendant Antoine Lundy. Lundy said that Perry "had been called away" and that Lundy would meet the informant instead. J.A. 69.

At approximately 5:50 p.m., an officer observed a white Chevrolet car arrive outside the informant's residence. The officer saw a woman driving the car, which was registered to Lundy's wife. Lundy was a passenger. While the woman waited in the car, Lundy entered the residence and sold 13 grams of crack cocaine to the informant for $550.

After obtaining a federal indictment against Lundy, law enforcement arrested him at his residence on July 16, 2012. While there, officers seized three loaded firearms, two bags of cocaine, marijuana, $2,370 in cash, and ammunition. Later, Lundy admitted that he possessed at least one of the firearms in furtherance of trafficking drugs.

B.

On November 20, 2012, the government filed a superseding indictment, charging Lundy with five counts. On January 22, 2013, Lundy entered into a plea agreement and pleaded guilty to two of the counts: conspiring to distribute cocaine under 21 U.S.C. § 846 (Count 1) and possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A) (Count 5).

Under the plea agreement, the government "agree[d] not to prosecute the defendant's wife . . . for conduct described in the indictment." J.A. 59. In turn, Lundy agreed to "knowingly

waive[] the right to appeal the conviction and any sentence [with certain limited exceptions]." J.A. 57-58. Lundy also conceded that the government could prove certain facts that implicated Lundy in the offenses.[1]

In accepting the plea agreement, the district court engaged in the colloquy mandated by Rule 11 of the Federal Rules of Criminal Procedure. Lundy attested to the following: (i) he had fully discussed the case with his attorney; (ii) he understood that he was waiving certain rights; (iii) no one had threatened him or made any promise (outside of the plea agreement) to coerce him to plead guilty; (iv) he was entering the plea "freely and voluntarily"; and (v) he was pleading guilty to Counts 1 and 5 because he was "in fact, guilty of the two offenses." J.A. 44, 47.

Lundy's counsel described the plea agreement's contents before the district court, including the immunity provision for Lundy's wife. The court did not, however, inquire about the immunity provision. As to the waiver-of-appeal provision, the district court mentioned the waiver of Lundy's "right to appeal any sentence imposed," but did not mention any waiver of the right to appeal his conviction. J.A. 44.

---

[1] Specifically, Lundy admitted that the government could prove the facts as stated in Part I.A of this opinion.

4

On June 5, 2013--the day before Lundy was scheduled to be sentenced--Lundy moved to withdraw his guilty plea under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. He claimed that he was legally innocent and that he pleaded guilty only to protect his wife from prosecution. He also denied ever having a "drug distribution relationship" with Perry or Henderson. J.A. 82. The district court then postponed Lundy's sentencing hearing and scheduled a hearing on Lundy's motion.

The court first heard testimony on October 17, 2013. Both of the alleged co-conspirators, Henderson and Perry, testified that they were partners. They also said that they had supplied Lundy with cocaine on multiple occasions over the years, and that Lundy would cook the cocaine into crack (as twice witnessed by Perry). As to the March 20, 2012 controlled purchase, Henderson and Perry noted that they had originally arranged the deal with the informant, but that Lundy in fact sold cocaine to the informant and returned money to them.

The court again heard testimony on November 6, 2013.[2] The informant and a police officer testified that Lundy had called

---

[2] At the beginning of the second day, Lundy attempted to withdraw the motion to withdraw his guilty plea. The district court prohibited Lundy from doing so because although Lundy wanted to reaffirm his plea, he simultaneously maintained his legal innocence. See, e.g., J.A. 363-64 (Lundy claiming that

the informant and arrived at the informant's residence on March 20, 2010. The officer said that an unidentified woman was driving the car in which Lundy arrived and that the car's license plate was registered to Lundy's wife.

Lundy's brother testified that he and Lundy were working in Richmond, Virginia on March 20, 2012, and did not return to Norfolk until after 7:30 p.m.--that is, after when the drug deal purportedly occurred. He could not corroborate his assertion with documentary evidence, however, because they were supposedly paid with cash.

Lundy's wife testified that during March 2012, Lundy would sometimes return home after 7:30 p.m. She admitted, however, that she owned a white Chevrolet Monte Carlo, similar to the car described by the supervising police officer. She also admitted that, based on the search of her residence on July 16, 2012, she faced state charges for possessing cocaine, although the charges were ultimately dismissed after she pleaded guilty as a first offender. Va. Code Ann. § 18.2-251.

Lastly, Lundy testified. He denied his guilt, denied any drug relationship with Perry or Henderson, and denied selling drugs to the informant. He claimed that he pleaded guilty only because the government had threatened to prosecute his wife.

---

"[t]he stuff that was at [his] house was there because [he] had a birthday party," not for distribution).

Although he conceded that his story meant that he committed perjury at the plea hearing, he claimed to have told the truth since then. And he accused Henderson, Perry, the informant, and the police officer of lying about Lundy's involvement.

After hearing all the evidence, the district court orally denied Lundy's motion to withdraw. In doing so, the court credited the testimony of the government's witnesses. The court also found that the testimony of Lundy, his wife, and his brother was not credible. One week later, the district court memorialized its decision in an order. On December 10, 2013, the district court sentenced Lundy to 250 months (over 20 years) in prison.

## II.

On appeal, Lundy argues that the district court erred in denying the motion to withdraw his guilty plea.[3] Unsurprisingly, the government disagrees. The government also argues that we should dismiss this appeal because under the plea agreement Lundy has waived any right to challenge his conviction. As discussed below, we decline to enforce the waiver provision but nevertheless find that the district court did not err.

---

[3] Lundy's counsel noted at oral argument that Lundy does not challenge the actual plea's validity.

7

## A.

We first address the government's waiver argument. Although the plea agreement provided that Lundy waived any right to appeal his conviction and sentence, the district court mentioned the waiver to Lundy only in regard to Lundy's right to appeal his sentence. Generally, a defendant's waiver of the right to appeal is valid if (1) a judge questions a defendant about the waiver of his appellate rights during the Rule 11 colloquy and (2) "the record indicates that the defendant understood the full significance of the waiver." United States v. Copeland, 707 F.3d 522, 528 (4th Cir. 2013) (quoting United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012)). Because the judge did not question Lundy about the full scope of the waiver provision and the record does not otherwise indicate that Lundy understood its full significance, we decline to enforce the waiver provision. Thus, we deny the government's motion to dismiss Lundy's appeal.

## B.

We next address the district court's denial of Lundy's motion to withdraw his plea under Rule 11, a decision which we review for abuse of discretion. United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000). Although Rule 11 permits the withdrawal of a guilty plea before sentencing, "[a] defendant

8

has no 'absolute right' to withdraw a guilty plea, and the district court has discretion to decide whether a 'fair and just reason' exists upon which to grant a withdrawal." United States v. Bowman, 348 F.3d 408, 413 (4th Cir. 2003) (quoting Ubakanma, 215 F.3d at 424). Because we find that the district court did not abuse its discretion in denying Lundy's motion, we affirm.

## 1.

In considering a withdrawal motion, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." Id. at 414 (quoting United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993)). "[R]eversal is warranted only if the plea proceedings were marred by a fundamental defect that inherently resulted in a complete miscarriage of justice, or in omissions inconsistent with rudimentary demands of fair procedure." Ubakanma, 215 F.3d at 425.

To assist this inquiry, a court may consider six factors:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and

9

> (6) whether it will inconvenience the court
> and waste judicial resources.

United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). As set forth below, we agree with the district court that none of these factors supports Lundy's request to withdraw his guilty plea.

## 2.

The first factor considers "whether the defendant has offered credible evidence that his plea was not knowing or not voluntary." Id. Lundy argues that he acted involuntarily under the government's threat to prosecute his wife.

Although there is nothing "per se invalid" about including third-party immunity clauses in plea agreements, Harman v. Mohn, 683 F.2d 834, 838 (4th Cir. 1982), we have noted that "[s]pecial care must be taken to determine the voluntariness of the plea in such circumstances," United States v. Morrow, 914 F.2d 608, 613 (4th Cir. 1990). Coercion may be present if (1) "the defendant demonstrates reluctance to enter a guilty plea, and does so only because of pressure from the third party" or (2) the promise for leniency is in regard to a third party for whom the "government actually lacks probable cause to charge." United States v. Lemery, 998 F.2d 1011, at *2 (4th Cir. 1993) (per curiam) (unpublished table decision) (citations omitted).

10

In this case, the record does not indicate (i) any reluctance by Lundy to plead guilty at the plea hearing or (ii) that the plea was otherwise unknowingly or involuntarily made. Rather, the record shows that Lundy admitted under oath that he was pleading guilty because he was in fact guilty of the charged offenses. He affirmed his plea as knowing and voluntary. At no point did Lundy equivocate on his guilt.

In addition, the district court did not err in finding that the government would have had probable cause to charge Lundy's wife. In other words, the government had evidence that "would warrant the belief of a prudent person that [Lundy's wife] had committed . . . an offense." Park v. Shiflett, 250 F.3d 843, 851 (4th Cir. 2001) (quoting United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984)). After the search of Lundy's residence, his wife admitted that she possessed cocaine. Moreover, evidence provided a basis to believe that she drove Lundy to the informant's residence on March 20. These facts--tying her to cocaine and the underlying drug deal--would have provided the government with probable cause to charge her as a co-conspirator in the drug conspiracy under 21 U.S.C. § 846. Thus, the district court rightly rejected Lundy's argument that the government coerced his plea with improper threats.

3.

The second factor in assessing a motion to withdraw considers "whether the defendant has credibly asserted his legal innocence." Moore, 931 F.2d at 248. Again, this factor does not support Lundy's request. Put simply, the evidence against Lundy is overwhelming, and there is no basis for us to find that he has credibly asserted his legal innocence. In essence, he rejects all that he said under oath, while spurning as lies all the testimony of his co-conspirators, the confidential informant, and law enforcement. Notwithstanding Lundy's claim, we defer to the district court's credibility determination. United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012) (citing Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)). Here, the credible testimony established that Lundy committed the charged offenses. Thus, we find no error in the district court's rejection of Lundy's claim of legal innocence.

4.

The district court also considered four other factors in deciding Lundy's motion. See Moore, 931 F.2d at 248 (providing that a court analyze the delay in filing the motion, the presence of close assistance from competent defense counsel, the prejudice to the government, and judicial economy). Lundy's argument in regard to these factors is cursory and, in essence,

12

blames the government for Lundy's delay in withdrawing his plea until the day before sentencing. After considering these factors, we find that they also cut against Lundy's claim. Thus, Lundy has offered no fair or just reason to withdraw his plea, and we find no error in the district court's denial of Lundy's motion.

## III.

For the aforementioned reasons, we affirm the district court's order and the appellant's conviction.

<u>AFFIRMED</u>